**Billy R. MUNCY, d/b/a Woodlake Golf Course, Plaintiff/Cross– Defendant–Appellee,**

v.

**G.C.R., INC. Defendant/Cross– Claimant–Appellant.**

No. 03–5511.

United States Court of Appeals, Sixth Circuit.

Sept. 7, 2004.

David H. Stanifer, Stanifer & Stanifer, Tazewell, TN, for Plaintiff–Appellee.

Keith McCord, County Attorney, The McCord Law Firm, Knoxville, TN, for Defendant–Appellant.

Before KRUPANSKY and GILMAN, Circuit Judges, and MAYS, District Judge.*

KRUPANSKY, Circuit Judge.

The defendant/cross-claimant-appellant G.C.R., Inc., ("GCR") has contested the

---

* The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

district court's judgment of dismissal, without prejudice, of all claims and cross-claims herein, for failure to prosecute. The plaintiff/cross-defendant-appellee Billy R. Muncy ("Muncy"), doing business as the Woodlake Golf Course located in Claiborne County, Tennessee ("Woodlake" or "the golf course"), has not contested the district court's judgment.[1]

The underlying lawsuit, a diversity breach of commercial contract action, germinated out of disputes engendered by the construction of the golf course. On May 5, 1997, Muncy, as an owner (with others) and developer of Woodlake, and GCR, as a landscaping and building contractor, executed a written agreement which included work specifications and timetables. That agreement stipulated, among other things, that Muncy would retain portions of the periodic contractual payments due to GCR for the completion of various stages of its work, to be paid upon GCR's completion of all work under the contract and Muncy's final acceptance thereof. In September 1998, GCR announced the completion of its work, simultaneously demanding final payment. However, Muncy protested that aspects of GCR's performance had been substandard, incomplete, or otherwise unacceptable, especially with regard to the irrigation system, top soil application, and alleged failures to eradicate rock outcroppings. Accordingly, Muncy refused to pay to GCR the $72,472.50 contract balance then due, because he allegedly had been compelled to retain a second contractor to correct and/or complete the contract work that GCR had averredly failed to perform competently.

On March 8, 1999, Muncy instituted a judicial complaint in Tennessee state court against GCR, alleging that he had suffered, or would suffer, over $200,000.00 in actual and consequential damages (includ-ing economic losses) caused by GCR's alleged contract breaches. Additionally, the plaintiff demanded $89,641.08 in "expenses and damages" from GCR, which evidently represented the full sum expended on corrective work performed by the replacement contractor. In total, the plaintiff demanded the principal sum of $289,641.08, plus litigation costs including attorney fees.

On April 23, 1999, GCR filed a Notice of Removal to Federal District Court based on federal diversity jurisdiction, supported by the plaintiff's Tennessee citizenship, the defendant's Florida incorporation and principal place of business, and a principal amount in controversy which exceeded $75,000. 28 U.S.C. §§ 1332 & 1441. The district court denied Muncy's subsequent motion for remand to the state court. On September 27, 1999, counsel for both litigants executed a written stipulation for entry of a consent order, which the presiding district judge journalized the following day, providing for a writ of attachment to perfect a state-law lien recorded by GCR against the golf course to secure its monetary claim against Muncy in an amount "not less than $72,472.50." *See* Tenn.Code Ann. §§ 66–11–101 *et seq.*, Following an October 28, 1999 failed effort by the parties to resolve the implicated disputes by non-binding mediation, GCR on November 1, 1999 answered Muncy's complaint and instituted its cross-complaint against the plaintiff for recovery of the $72,472.50 contract balance alleged due to GCR. On November 12, 1999, Muncy answered GCR's cross-complaint.

Between November 12, 1999 and March 10, 2003, neither the litigants, nor their attorneys, did anything whatsoever by way of trial preparation. During that three-year-and-four-and-one-half month period,

---

1. Muncy elected not to file an appellee's brief     in the subject appellate proceeding.

neither side had conducted any discovery; no substantive pre-trial motion(s) had been initiated; and no pre-trial order had been proposed. Moreover, no record evidence reflected that any substantial attempt had been made after October 28, 1999 to resolve the conflict by extra-judicial means, or that *meaningful* settlement negotiations were ongoing.

Instead, the primary occupation of the lawyers with regard to the subject litigation during that extended period of overall inactivity was the serial filing of four joint motions for further continuances of the trial date, each of which the presiding judge granted. Counsel repeatedly claimed, in affidavits proffered in support of their joint motions, that unspecified "extraordinary and unusual circumstances in their respective legal practices" impeded their ability to prepare the subject case for trial, and that the taking of depositions and other discovery had been obstructed by the absence of key witnesses (mainly expert professionals) from the state of Tennessee.

As a March 31, 2003 trial date approached, the plaintiff's lawyer David H. Stanifer, on March 3, 2003, moved for a fifth extension of time, asserting in his supporting affidavit that the parties were nearing a negotiated settlement. He concomitantly proffered a proposed order of continuance (approved by GCR's attorney Keith McCord) which, if adopted, would have rescheduled the trial for August 5, 2003 or sometime thereafter. In response thereto, the district judge noticed a hearing for March 10, 2003 on that request. During that proceeding, Muncy's lawyer Stanifer proffered, for the first time, that the plaintiff had been undergoing cancer treatments at the Mayo Clinic in Minnesota, which averredly contributed to his inability to prepare for trial. Moreover, plaintiff's counselor also revealed for the first time that, following the failed mediation, he and opposing counsel had agreed to "slow walk" this litigation in the hope that passions and hostility between the parties might dissipate over time, which might contribute to a more favorable settlement environment. Defense counsel McCord corroborated that agreement, adding that both attorneys had wished to avoid the potentially substantial expenses involved in conducting depositions and a full trial.

Ultimately, over defense counsel's opposition but with the plaintiff's attorney's acquiescence, the trial bench resolved that the case would be dismissed *without prejudice* for want of prosecution, accompanied by a punctuated recommendation to both counsel that the claims should be promptly settled or "dropped" rather than revived via a renewed complaint and cross-complaint.[2] On the following day, March 11,

---

**2.** The trial judge's exasperation with the endless unjustified protraction of the subject lawsuit, which neither attorney evidently wanted to try in court but which both litigants refused to compromise, was revealed by his commentary during the hearing:

> Well, this case has been pending longer than any case we have got, ever, I guess. We just keep passing it, passing it, nobody seems real interested in trying it. Those are the kind of cases that, you know, they have filed a case and wish they had never heard of it and don't know how to get rid of it. I have had those cases myself. I know

that is the truth. You know, your client old Muncy, you know, he never wanted to spend a bunch of money on attorney fees.
 . . . .
 Here is what I am going to do. I am going to dismiss for failure to prosecute. You have a year within which to bring it again. In the meantime I would highly recommend that you all get together and try to settle this case because it is not going to make anybody any money. In my opinion, of course. Mr. McCord disagrees. His client wants a hearing. You got to push these things, Mr. McCord. These things

2003, the trial court entered a written judgment of dismissal without prejudice. On March 20, 2003, defendant/cross-plaintiff GCR moved for reconsideration of that judgment, contending that the sanction of dismissal, on the subject record, constituted an abuse of discretion because it allegedly offended prevailing legal norms. Alternatively, GCR argued, for the first time, that even if the dismissal without prejudice of its cross-claim was *otherwise* lawful, it ultimately still comprised an abuse of discretion, because GCR would suffer severe and irreparable harm by its loss of its state-law litigation lien and writ of attachment against the golf course.

On March 26, 2003, the lower court denied GCR's motion for reconsideration. On April 11, 2003, GCR noticed a timely appeal.

The instant dismissal without prejudice conformed to prevailing standards governing dismissals of actions for want of prosecution. A district court may dismiss an action "[f]or failure of the plaintiff [or cross-complainant] to prosecute or to comply with these rules or any order of court."

Fed.R.Civ.P. 41(b). The Sixth Circuit has recognized four factors which are typically relevant to the assessment of a dismissal for lack of prosecution:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal of the action.

*Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 589 (6th Cir.2001) (citations omitted).

However, those factors are merely guideposts or points of departure for the overall "abuse of discretion" analysis,[3] which by necessity is highly fact-specific and case-specific; they are *not* required "elements." Rather, any sanction-motivated dismissal, *even "with prejudice,"* is justifiable in any case in which "there is a clear record of delay or contumacious conduct on the part of the plaintiff [and/or cross-plaintiff]." *Id.* at 591. *See also Vin-*

---

just lay around and lay around and lay around, you know.

I get all these—around here it's a funny thing. We have to send these reports to Washington. Big brother watches the federal courts. They passed this civil some kind of thing that keeps these cases moving. If you don't do it, you get chastised by these folks. We have a heavy criminal docket and it is just lucky to get a civil case set sometimes. We can use these settings for criminal cases.

I believe it will go away. You might not let it go away. You might file it again tomorrow morning, which will be all right. Whatever you want to do. I am just here to try it. It is [not?] going to be tried now. I ain't going to fool around with this case now.

MR. McCORD: I understand Your Honor's ruling.

THE COURT: That is what I am going to do. The case is closed. Send them a bill and go on. No pretrial order. Heck, the case is set this month. There is no pretrial order down. There is nothing, nothing. No depositions, nothing.

3. The intermediate court examines for abuse of discretion a judicial dismissal as a sanction under Rule 41(b), including a dismissal without prejudice. *Coleman v. American Red Cross*, 23 F.3d 1091, 1094 (6th Cir.1994); *Huey v. Stine*, 230 F.3d 226, 228 (6th Cir. 2000), *overruled on other grounds by Muhammad v. Close*, 540 U.S. 749, 124 S.Ct. 1303, 1304–05, 158 L.Ed.2d 32 (2004). An abuse of discretion occurs "when the reviewing court is firmly convinced that a mistake has been made. A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses [an] erroneous legal standard." *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir.1995) (quotation marks and citations omitted).

ci v. Consol. Rail. Corp., 927 F.2d 287 (6th Cir., 1991) (*per curiam*) ("The dismissal [with prejudice] of an action for an attorney's failure to comply is a harsh sanction which the court should order only in extreme situations showing 'a clear record of delay or contumacious conduct by the plaintiff.'") (citations omitted).

By contrast, the sanction of dismissal *without prejudice* is a comparatively lenient sanction, and thus the controlling standards should be greatly relaxed in cases such as the one *sub judice*, because the dismissed party is ultimately not irrevocably deprived of his day in court. *Nwokocha v. Perry*, 3 Fed.Appx. 319, 321 (6th Cir.2001) (*per curiam*) (citing two published decisions of the Eighth Circuit).

In the case *sub judice*, the subject dismissal without prejudice of all claims was justified because the adversaries and their lawyers all contributed to the perennial absence of progress towards a resolution. Counsel and litigants in both camps deliberately delayed and protracted the litigation at issue, such that this case would have threatened an eternal presence on the inferior court's docket if the presiding judge had failed to take decisive action. The case instanter had been pending for a full four years (from March 8, 1999 to March 11, 2003) with absolutely no trial preparation and no fruitful developments towards settlement. Although perhaps not "bad faith" conduct in the strictest sense, the litigants and their lawyers nonetheless abused judicial processes by perpetuating a court action which was not being seriously prosecuted, with each adversary evidently hoping that the opponent would ultimately capitulate by reason of weariness, exhaustion, or boredom. Manifestly, trial courts have superior uses for their limited time and scarce resources. Beyond contraversion, the time to dismiss had arrived, even absent any additional factors supportive of the lower court's judgment.[4]

Accordingly, the district court did not abuse its discretion by ordering the subject *sua sponte* dismissal without prejudice, because it was a comparatively lenient penalty for the pattern of delay and abuse of judicial processes exhibited by counsel and the litigants herein, which mis-

---

4. The remaining three *Mulbah* factors either further supported the judgment of dismissal without prejudice, or were neutral considerations. Muncy, as the party who did not oppose the judgment of dismissal, conceded that he would suffer no prejudice thereby. The absence of a prior explicit warning by the trial judge that he might dismiss the case if the parties sought an additional extension of the trial date was immaterial, because any experienced trial lawyer should have known that no judge would forever tolerate incessant requests for continuances of an action unaccompanied by any proof of progress towards either settlement or trial readiness. *Cf. Link v. Wabash RR Co.*, 370 U.S. 626, 633, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (ruling that the trial bench had not abused its discretion by dismissing a complaint for failure to prosecute after the plaintiff's lawyer had resisted discovery and failed to appear at a pretrial conference, because counsel's persistent misbehavior reflected a deliberately dilatory intent; the Court suggested that the absence of a prior warning was immaterial because the lawyer should have known that his pattern of wrongful conduct might lead to dismissal). Finally, both the absence of a prior warning, and the evident failure of the trial court to consider any "lesser" sanction, are minor considerations in cases involving dismissals *without prejudice*, as the opponent of that dismissal can still ultimately have his day in court. *Cf. Shepard Claims Service, Inc. v. William Darrah & Assoc.*, 796 F.2d 190, 195 (6th Cir.1986). Indeed, on the facts of the matter at bench, the dismissal without prejudice was a far less punitive sanction than would have been most any conceivable alternative, including adherence to the calendered March 31, 2003 trial date, the striking of all or select claims *with* prejudice, a substantial fine, binding constructive admissions of relevant facts, or discovery limitations.

conduct satisfied prevailing legal standards.[5]

Alternatively, GCR had failed to demonstrate, in support of its motion for reconsideration, that it would suffer any severe and/or irreparable damage by reason of the assailed dismissal without prejudice, and thus the trial judge did not abuse his discretion by denying that motion. *See Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir.1982). A motion to reconsider a judgment is a species of petition to alter or amend that judgment under Fed.R.Civ.P. 59(e). *Id.* A Rule 59(e) motion can be granted only for one of three reasons: (1) to correct a clear error of law; (2) to account for newly discovered evidence or an intervening change in the controlling law; or (3) to otherwise prevent manifest injustice. *GenCorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir.1999).

GCR has maintained that the judgment of dismissal without prejudice worked a "manifest injustice" against it, based *in toto* upon the following argument:

> While the order of dismissal was without prejudice, its effect is very prejudicial and detrimental upon G.C.R., while unjustly benefitting Muncy. If this Court allows the District Court's order dismissing this case to stand, G.C.R. will lose its Lien and Attachment on the Woodlake property securing the indebtedness owed by Muncy. In the event the order stands, Muncy will benefit because the property will be released from the attachment and Muncy's indebtedness to G.C.R. will become an unsecured claim rather than a secured claim.
>
> G.C.R. Inc. urges this Honorable Court to set aside the District Court's order dismissing the case for failure to prosecute and allow G.C.R.'s Lien to remain attached.

The two paragraphs reproduced above constituted the entire polemic framed by GCR to advance its "prejudice" claim. The appellant fatally neglected to cite any supporting legal authority or any record evidence. Accordingly, GCR failed thereby to mount a cognizable challenge to the lower court's judgment. *See* Fed. R.App. P. 28(a)(9)(A) (instructing that an appellant's brief must contain its "contentions and the reasons for them, *with citations to the authorities and parts of the record on which the appellant relies*") (emphasis added); *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir.1996) (mandating that an intermediate court should deem waived any issues or arguments which were insufficiently developed in the appellant's initial brief). "It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Northland Ins. Co. v. Stewart Title Guaranty Co.*, 327 F.3d 448, 452 (6th Cir.2003) (citation omitted). *See also United States v. Layne*, 192 F.3d 556, 566–

---

5. In fact, the dismissal without prejudice in controversy bore as many characteristics of a sound judicial case and docket management technique as it did the qualities of a sanction for misconduct, especially given that the public policy interest in the disposition of cases on their merits was not unavoidably compromised, as developed herein. *See Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 590–91 (6th Cir.2001) (recognizing strong countervailing public policy interests in "the court's need to manage its docket" and "in expedi-

tious resolution of litigation" even where the dismissal was with prejudice). "Federal courts have inherent powers necessary for them to function as an institution." *In re Smothers*, 322 F.3d 438, 442 (6th Cir.2003) (*citing, inter alia, Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (explaining that the courts' inherent powers are animated "by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases")).

67 (6th Cir.1999). "Whereas forfeiture is the failure to make the timely assertion of a right, *waiver* is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (emphasis added; citations omitted). Unlike a mere "forfeiture," a *waiver*, once accomplished, is complete, permanent, and irrevocable; a litigant which has waived a contention or claim is powerless to retract that waiver, and the issue is forever foreclosed. *United States v. Saucedo*, 226 F.3d 782, 787 (6th Cir.2000).

In the case in controversy, GCR has patently waived its "prejudice" argument by its underdevelopment and its lack of factual or legal support. GCR has entirely failed to demonstrate, as either a matter of fact or law, that the dismissal without prejudice of the lawsuit has substantially injured it. The precise effect of the dismissal without prejudice of the court action upon GCR's security interest against the golf course has not been developed. Instead, GCR has merely asserted, in conclusory fashion, that it will be deprived of its $72,272.50 state-law attachment against the golf course if its cross-claim is not reinstated. Even if that is true as a matter of Tennessee law (which the appellant has not demonstrated), no reason has been shown why GCR could not simply reinstitute a judicial complaint in state or federal court against Muncy for its claimed $72,272.50, which would authorize a renewed state law writ of attachment against the golf course.

The evident worst case scenario for GCR is that, if it must re-file its judicial claim anew, it might forfeit some *priority* as a secured creditor (which GCR has not supported by reference to any specific Tennessee legal authority). However, even assuming *arguendo* that it will cede priority vis a vis Muncy's other secured creditors, GCR *still* has not evidenced that it would consequentially suffer any actual financial harm. GCR has not evinced that Muncy's ownership interest in the golf course has been so encumbered by junior liens that, should those junior liens assume priority over GCR's now-dissolved lien and attachment, Muncy's remaining unencumbered equity would be insufficient to cover a new, lower priority $72,272.50 lien and attachment in GCR's favor. By the same token, even if GCR were to forego initiating a new lawsuit and attaining a new lien and attachment, but instead were simply to settle its claim for some payment from Muncy equal to or less than $72,272.50, it has offered no proof that it would be unable to collect that sum from Muncy absent the priority secured lien that it allegedly possessed before the lawsuit's dismissal. In all events, if GCR ultimately suffers any actual prejudice, it will have no one to blame but itself, both for abusing court processes and for failing to frame a sustainable opposition to the dismissal of its cross-claim.

Accordingly, the district court did not abuse its discretion by dismissing the subject complaint and cross-complaint without prejudice. The trial court was justified, on the overall record, to impose that comparatively lenient sanction for the litigants' concerted abuses of judicial processes. Moreover, GCR has failed to develop a legally or factually sustainable "unfair prejudice" argument. Thus, the March 11, 2003 judgment of the district court, and its March 26, 2003 denial of reconsideration, are **AFFIRMED.**