**NOT RECOMMENDED FOR FULL TEXT PUBLICATION**
File Name: 08a0676n.06
Filed: November 5, 2008
No. 06-2414

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JAMES WARREN SCHREIBER,
     *Plaintiff, Appellant*

                                  On Appeal from the United States District
                                  Court for the Western District of Michigan

     v.

OFFICER WILLIAM MOE AND CITY OF GRAND RAPIDS,
     *Defendants, Appellees*

_____/


**BEFORE: KENNEDY, BATCHELDER, and GRIFFIN, Circuit Judges.**

**KENNEDY, Circuit Judge.** Plaintiff-Appellant James Schreiber appeals the district court's order dismissing the remaining count of his complaint as a sanction for his counsel's failure to file a pre-trial memorandum and to attend the final pre-trial conference. Schreiber also appeals the district court's order granting partial summary judgment to Defendants Officer William Moe and the City of Grand Rapids on his claims of warrantless entry and excessive force brought under 42 U.S.C. § 1983. For the reasons set forth below, **REVERSE** the district court's dismissal of Schreiber's remaining excessive force claim, and **REMAND** the case for further proceedings consistent with this opinion.

**BACKGROUND**

The following statement of facts is taken from the district court's opinion and order granting in part and denying in part Defendants' motion for summary judgment:

On November 1, 2002 at approximately 3:39 p.m., the Grand Rapids Police Department emergency communications center received a 911 call from an anonymous caller reporting a domestic dispute between Schreiber and his 15-year-old daughter, Sarah. . . . The dispatch operator labeled the incident a "Priority 2." The Grand Rapids Police Department Manual

of Procedures provides that a Priority 2 call involves the potential for physical harm against a person present at the scene. At approximately 3:46 p.m., Officer Moe was dispatched to the Schreiber's home to check on the situation. While enroute he received a message from the dispatch operator explaining that it was a Priority 2 call involving the welfare of a 15-year-old girl and that an anonymous caller "thinks she is getting beat." Exhibit D.

Schreiber does not dispute that, prior to Officer Moe's arrival, he and his daughter were involved in a "heated" discussion. Schreiber Dep. at 17. The argument was the culmination of Sarah's recent rebellious behavior. Schreiber acknowledges that during the argument, he took the phone away from Sarah and "threw it on the floor because she wouldn't hang up." Schreiber Dep. at 21. It is not clear from the record, but at some point prior to Officer Moe's arrival, Sarah telephoned a social worker at Catholic Social Services, Cindy Musto. Musto explained that she spoke with Schreiber in an effort to calm him down, however, during their conversation, he continued to yell and threaten his daughter. Musto Dep. at 8-9, 12. Schreiber left the phone after hearing a knock at the door. Musto Dep. at 8.

The knock on the Schreiber's door was Officer Moe. Officer Moe arrived at Schreiber's residence shortly after being dispatched to the location. Upon his arrival, Officer Moe heard screaming coming from the residence: "I could hear a male voice inside screaming profanities at an unknown person." December 11, 2002 Preliminary Examination Transcript at 7-8 ("Prelim. Tr."). When Officer Moe knocked on the apartment door, a young boy, James Schreiber Jr., opened the door. When the door opened, Officer Moe could see Schreiber screaming at someone but could not see the target of his invective. Prelim Tr. at 9. Officer Moe was also not able to see Sarah. According to Officer Moe, he asked Schreiber's son if Sarah was okay, however, before the boy could answer, Schreiber came to the door, yelling profanities, and demanding to know why Officer Moe was there. Prelim. Tr. at 9, 11. Schreiber then profanely told Officer Moe that he was not permitted in the apartment. Schreiber Dep. at 25. Officer Moe informed him that he was going to check on Sarah's welfare. Schreiber Dep. at 24. Despite Schreiber's repeated, belligerent objection to the entry, Officer Moe entered the apartment because he "was deeply concerned that his (Schreiber's) daughter was not okay and she may be injured and he may have assaulted her." Prelim. Tr. at 13. Officer Moe conceded that Schreiber did not invite him into the home. Prelim. Tr. at 13.

After entering the residence, Officer Moe located Sarah in the living room and observed that she was crying and upset. Prelim. Tr. at 14, Schreiber Dep. at 29-30. Despite Officer Moe's arrival, both Schreiber and his daughter continued to argue and curse at each other. Prelim Tr. at 14-15. Officer Moe described the situation as "chaos" and "basically a barrage of profanities" and threats between Schreiber and his daughter. Prelim. Tr. at 17-18. Schreiber also continued to yell at Officer Moe, calling him a "Neo Nazi" and "pig." Schreiber Dep. at 31. He also continued to demand that Officer Moe leave his home or obtain a search warrant. Schreiber Dep. at 31. In light of the situation, Officer Moe requested immediate back up from an additional officer. Prelim. Tr. at 17.

At some point during the early stages of the situation, Officer Moe talked to Musto on the telephone. Prelim. Tr. at 18, Schreiber Dep. at 30-31, Musto Dep. at 12-13. Officer Moe claims that Schreiber's wife handed him the phone and indicated that Musto would explain the situation. Prelim. Tr. at 18. Schreiber does not dispute that Officer Moe spoke with Musto on the telephone. Musto identified herself and explained that she was concerned for Sarah's safety. Musto Dep. at 13-14, Prelim. Tr. at 18. After suggesting that Sarah be taken to a teen shelter, Musto ended the phone call

2

with Officer Moe. Musto Dep. at 13. Upon the arrival of Officer Matthew Veldman on the scene, Officer Moe attempted to run a file check on Schreiber and asked Schreiber's wife if she had a personal protection order against him. During this time, Schreiber continued to yell at Officer Moe and demand that he leave. Schreiber Dep. at 31-32, 34, Prelim. Tr. at 21-22. Schreiber also asked if he could leave the living room to use the bathroom. Schreiber Dep. at 34. Officer Moe refused to allow Schreiber to leave the living room. Prelim. Tr. at 22, Schreiber Dep. at 34. According to Schreiber, Officer Moe said that he would not allow Schreiber to leave because he might have a gun in another room. Schreiber Dep. at 34. Schreiber also asserts that Officer Moe pushed him back onto the couch when he attempted to stand up and leave.

Although Officer Moe would not allow Schreiber to go to another room in the apartment, Schreiber did go outside on a second-story balcony to relieve himself. Schreiber Dep. at 34-35. When Schreiber exited the apartment onto the balcony, Officer Moe closed the sliding glass door behind him. Prelim. Tr. at 25. Schreiber maintains that Officer Moe locked the door and was laughing at him from inside the apartment. Schreiber Dep. at 34-35. Schreiber, however, concedes that he did not see Officer Moe lock the door. Schreiber Dep. at 37. Nevertheless, Schreiber became incensed, used more profanity, and demanded that Officer Moe open the door. Schreiber Dep. at 36. When Officer Moe did not open the door, Schreiber ripped off the screen door, grabbed a lawn chair and struck the glass door three times, causing the door to completely shatter into the apartment. Schreiber Dep. at 36.

The parties tell slightly different versions of the ensuing events. Schreiber acknowledges that he was "out of control" when he broke the sliding glass door, however, he contends that he walked into the apartment and was immediately grabbed by Officer Moe and thrown to the glass-covered floor. Schreiber Dep. at 42-43. Schreiber could not recall if he said anything as he walked through the door. Schreiber Dep. at 44. Schreiber also denies that he tried to strike Officer Moe during the incident. Schreiber Dep. at 47. He also claims that when he landed face down on the floor, Officer Moe was on top of him, rubbed his face in the glass and punched him in the face and side, at least twenty times. Schreiber Dep. at 46-47. Although Schreiber denies that he attempted to strike Officer Moe, he concedes that while the two men were on the ground he continued to use profanity and insult Officer Moe. Schreiber Dep. at 48.

Officer Moe asserts that when Schreiber broke through the door he immediately charged at Officer Moe. Prelim. Tr. at 26. Officer Moe maintains that Schreiber struck him at least seven or eight times and that, during the struggle, he brought Schreiber to the ground amidst the glass. Prelim. Tr. at 26-27. Although Officer Moe denies that he pushed Schreiber's face into the glass, he does concede that he hit Schreiber at least six times. Prelim. Tr. at 27. He maintains that these punches were necessary to defend himself from Schreiber's attack. Prelim. Tr. at 27. While the two men were struggling on the ground, Officer Veldman prevented two of Schreiber's children from jumping on Officer Moe's back. Prelim. Tr. at 28. Officer Moe also claims that he struggled with Schreiber on the ground for about two minutes before he was able to control him and apply handcuffs. Prelim. Tr. at 28.

After Schreiber was handcuffed, Officer Moe escorted him to his police car. While en route, Schreiber cursed at Officer Moe and spit blood in his direction. Schreiber claims that when Officer Moe placed him in the police car, he kicked Schreiber five times in the ribs. Schreiber Dep. at 50. Officer Moe denies this accusation. While in the police car, Schreiber continued to scream and spit

3

blood. He also told Officer Moe that he had AIDS. Schreiber Dep. at 52. Schreiber did not have AIDS, but, by his own admission, lied to Officer Moe to "piss him off." Schreiber Dep. at 53.

Schreiber was taken to a local hospital where he was treated for three facial lacerations as well as bruises and swelling around each eye. Although he complained of rib pain, medical personnel did not discover a fracture. According to Officer Moe, while he was transporting Schreiber to the hospital, Schreiber threatened to kill him, have someone else injure him, or sue him. On December 16, 2003, Schreiber plead no contest in state court to a misdemeanor offense of attempting to assault, wound, resist, obstruct, oppose, or endanger a police officer in violation of MICH. COMP. LAWS §§ 750.81d(1), 750.92. Thereafter, Schreiber filed the present lawsuit seeking damages for alleged constitutional violations.

J.A. at 254-61.

On February 4, 2005, Schreiber filed his Complaint, alleging that Defendant Officer Moe violated his Fourth Amendment rights by unlawfully entering his home, arresting him, and using excessive force to effectuate the arrest. Schreiber also alleged that Defendant City of Grand Rapids violated his constitutional rights by maintaining a policy that caused the alleged Fourth Amendment violations.[1] After they were served on May 19, 2005, Defendants filed an Answer on July 12, 2005. The district court issued a Case Management Order on August 11, 2005, which set the date of the Final Pre-trial Conference for October, 3, 2006 at 8:30 a.m. The Case Management Order also required the parties to jointly prepare and file a Proposed Final Pre-trial Order three business days prior to the conference.

On August 10, 2006, the district court issued an opinion and order granting in part and denying in part Defendants' motion for summary judgment. The district court granted summary judgment to Defendants on Schreiber's warrantless entry, false arrest, illegal imprisonment, and excessive force in effectuating the arrest claims, finding them barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and alternatively, finding Officer Moe entitled to qualified immunity. The district court,

---

[1]This claim is not before us, however, as Schreiber has not appealed the district court's grant of summary judgment to the City.

4

however, denied summary judgment to Defendants on Schreiber's claim that Officer Moe kicked him five times while he was handcuffed and in custody in the police car, finding this alleged excessive force not barred by *Heck* and denying Officer Moe qualified immunity for his alleged conduct. Thus, Schreiber's claim that Officer Moe used excessive force against him after he was subdued and in custody was the sole surviving count of his complaint.

The Final Pre-trial Conference was held on October 3, 2006, at 8:30 a.m., as scheduled by the Case Management Order. Defendants' counsel separately prepared a pre-trial memorandum and e-filed it with the district court on September 28, 2006, three days before the scheduled Final Pre-trial Conference, as required. Schreiber's counsel, however, did not submit a proposed final pre-trial order. While Defendants' counsel timely appeared for the conference, Schreiber's counsel failed to attend. The transcript indicates that the district court's staff attempted to contact Schreiber's counsel by phone, but received no answer. After waiting for Schreiber's counsel for approximately thirty minutes, the district court inquired whether defense counsel had any motion to make; Defendants moved to dismiss Schreiber's remaining claim. The district court noted Schreiber's counsel's absence at the pretrial conference and failure to file a proposed pretrial order and ordered the case dismissed because "it appear[ed] Plaintiff and/or Plaintiff's counsel has abandoned said case."

Schreiber timely appealed the district court's final order disposing of all claims.

## ANALYSIS

### I.     The district court's dismissal of Schreiber's remaining claim of excessive force

#### A.     Standard of review

We review a district court's dismissal of an action for a party's failure to comply with procedural requirements for abuse of discretion. *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th

5

Cir. 1980) (*per curiam*). An abuse of discretion exists when the district court's action leaves us with "a definite and firm conviction that the trial court committed a clear error of judgment." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998).

**B.      The district court abused its discretion when it dismissed Schreiber's action**

In the present case, neither the district court's order nor the transcript of the pre-trial conference indicates the specific rule of federal civil procedure or other authority under which the district court dismissed the case. Rule 16(f) of the Federal Rules of Civil Procedure provides for sanctions in the event that a party fails to appear at a pretrial conference, including the sanction of involuntary dismissal. *See* FED. R. CIV. P. 16(f), 37(b)(2)(A)(v). In addition, Rule 41(b) of the Federal Rules of Civil Procedure allows for dismissal for failure to prosecute or failure to comply with court orders.

While we have recognized that district courts possess broad discretion to sanction parties for failing to comply with procedural requirements, *Carver v. Bunch*, 946 F.2d 451, 453 (6th Cir. 1991), we have also cautioned that dismissal for failure to prosecute "is a harsh sanction which the court should order only in extreme situations showing a 'clear record of delay or contumacious conduct by the plaintiff,'" *id.* at 454 (quoting *Carter*, 636 F.2d at 161). "Absent this showing, an order of dismissal is an abuse of discretion; . . . dismissal is appropriate only if the attorney's dilatory actions amounted to failure to prosecute and no alternative sanction would protect the integrity of pre-trial procedures." *Carter*, 636 F.2d at 161.

When contemplating a dismissal for failure to prosecute, a court must consider:

(1) whether the party's failure to cooperate is due to willfulness, bad faith, or fault;

(2) whether the adversary was prejudiced by the dilatory conduct of the party; (3)

6

whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Tetro*, 173 F.3d at 992 (quoting *Stough*, 138 F.3d at 615); *see also Regional Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 153-55 (6th Cir. 1988).

In the present case, the district court did not undertake any analysis concerning Schreiber's procedural deficiencies; rather, the district court noted Schreiber's counsel's absence at the pretrial conference and failure to file a proposed pretrial order and ordered the case dismissed because "it appear[ed] Plaintiff and/or Plaintiff's counsel has abandoned said case."  In his brief on appeal, Schreiber's counsel alleges that he failed to file a proposed pre-trial order and failed to attend the final pre-trial conference due to a calendaring error.[2]  We note, though, that Schreiber did not offer this excuse to the district court and did not seek to set aside the order by way of a Rule 60(b) motion. As we are reviewing the district court's decision to dismiss for an abuse of discretion, we must only consider that information that the court had before it at the time it ordered dismissal.  While this Court does not require that an appellant file a Rule 60(b) motion to successfully appeal an order of dismissal, *see Carter*, 636 F.2d at 161, an appellant would be wise to do so as we cannot consider his excuse for the first time on appeal.[3]

---

[2]In reply, Defendants' counsel alleges that her staff attempted to contact Schreiber's counsel by phone and by e-mail prior to the conference to no avail.  Defendants' counsel also contends that if Schreiber's counsel had simply failed to calendar the date of the final pre-trial conference, as he alleges, then the electronic service of a pre-trial memorandum filed solely by Defendants would have put him on notice that the date of the conference was approaching.

[3]We see the wisdom of Judge Joiner's dissent in *Carter*, suggesting that the filing of a Rule 60(b) motion should be a requirement to a successful appeal of an involuntary dismissal, *see id.* at 162 (J. Joiner, dissenting).  Such a requirement would ensure that the district court has the

Applying the four elements to the facts of the present case, we are convinced that the district court abused its discretion in dismissing Schreiber's case. First, the district court did not find that Schreiber's counsel acted willfully or in bad faith by failing to attend the pretrial conference and failing to file a proposed pretrial order. In support of their motion to dismiss at the pretrial conference, Defendants argued to the district court,"This is not the first time [Schreiber's counsel] has failed to do something on time. . . . It's just a long pattern of trying to get ahold of [him] unsuccessfully . . . ." J.A. at 307. Defendants specifically mentioned that Schreiber's counsel had not contacted them to prepare the Rule 16 joint statement, as he was required to do by the Case Management Order, and he did not file his mediation brief on time. *Id*. On appeal, Defendants argue that the district court's dismissal is supported by "a long and consistent pattern of delay, inattention, and contumacious conduct" by Schreiber's counsel, which included: (1) failure to comply with the voluntary disclosure deadlines of the Case Management Order; (2) failure to timely respond to discovery requests served by Defendants; (3) failure to conduct any discovery to support Schreiber's claims; and (4) repeated failure to pay the case evaluators' fees. However, there is nothing in the record to reflect that the district court considered these additional incidents, their validity, or whether if valid their relevance, when ordering Schreiber's case dismissed. The district court's stated reasons for dismissal – Schreiber's counsel's failure to appear at the pretrial conference and failure to file a proposed pretrial order – coupled with the reasons presented by Defendants on their motion to dismiss – counsel's untimely filing of his Rule 16 Status Report (three days late) and Case Evaluation Brief (thirteen days late) – do not rise to the level of contumacious conduct. Second,

opportunity to reconsider the decision to dismiss in light of any excuse counsel might have had for his dilatory conduct. It also would have indicated to the district court that counsel was willing and able to take the steps necessary to take his case to trial.

8

although the district court noted for the record that counsel for Defendants had waited a half hour for Schreiber's counsel to appear at the final pretrial conference, there is no evidence that Defendants suffered any prejudice because of Schreiber's counsel's dilatory conduct. Third, the district court did not provide Schreiber with any warning that a failure to attend the pretrial conference or to submit a proposed pretrial order could result in dismissal. Finally, the district court did not consider a less drastic sanction before it ordered the case dismissed. We have found that "in the absence of notice that dismissal is contemplated a district court should impose a penalty short of dismissal unless the derelict party has engaged in "bad faith or contumacious conduct." *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir. 1988). In the case before us, there was no such notice and no finding of bad faith or contumacious conduct. For these reasons, we find that the district court committed a clear error of judgment when it dismissed the remaining count of Schreiber's complaint.

The dissent's focus on the plaintiff's failure to depose a single witness as a factor supporting the dismissal is misplaced. As the district court's earlier opinion dismissing several of plaintiff's claims discloses, the police officers' testimony regarding the incident was available from the preliminary examination relating to the incident. (A 260 *et seq.*) Included in the appendix are other portions of the testimony from the preliminary examination of the criminal prosecution of plaintiff in the state court.

Nor do the authorities cited by the dissent support its proposition. In *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005), we reversed the district court's dismissal of plaintiff's case where the district court failed to warn plaintiff's lawyer that he faced dismissal of plaintiff's case. The quoted language is part of a quote from *Mulbah v. Detroit Bd. of Educ.,* 261 F.3d 586 (6th Cir. 2001). Again, in *Schafer v. City of Defiance Police Dep't,* 529 F.3d 731 (6th Cir. 2008), the court

had given a warning to one of the two plaintiffs. In the case of the other, he knew his case had been dismissed without prejudice and would be dismissed with prejudice if he did not refile in six months, which he had not. Nor had he made any effort to refile after that period had expired. (Although he was incarcerated, he had not explained why he could not have made some effort to do so.) Also, in contrast to the dismissal appealed from here, the district judge, in his order of dismissal, indicated the factors upon which he relied.

## II. The district court's grant of partial summary judgment

We decline to exercise jurisdiction over Schreiber's other claims as our reversal of the district court's order of dismissal instantly reinstates the case, making his appeal of the district court's grant of partial summary judgment an impermissible appeal of an interlocutory order. *See Hughley v. Eaton Corp.*, 572 F.2d 556, 557 (6th Cir. 1978) ("[S]ufferance of a dismissal of a cause without prejudice is not to be employed as an avenue for reaching issues which are not subject to interlocutory appeal as of right.").

## CONCLUSION

For the aforementioned reasons, we **REVERSE** the district court's dismissal of Schreiber's remaining excessive force claim, and **REMAND** the case for further proceedings consistent with this opinion.

GRIFFIN, Circuit Judge, dissenting.

I respectfully dissent on the grounds that the district court did not abuse its discretion by dismissing plaintiff's complaint. The history in the underlying case presents a clear record of plaintiff's counsel's dilatory conduct, which I conclude is sufficient to affirm the district court's involuntary dismissal.

We should reverse a district court's order of dismissal only if we have a definite and firm conviction that the trial court committed a clear error of judgment. *Days Inn Worldwide, Inc. v. Patel*, 445 F.3d 899, 906 (6th Cir. 2006) (citation omitted). "A clear example of an abuse of discretion exists where the trial court fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based." *Id.* (citation omitted).

Although we ordinarily require a district court to make specific findings of dilatory or contumacious conduct when dismissing a case for failure to prosecute, we have yet to mandate reversal absent those findings where the record itself demonstrates a pattern of chronic delay or impudent conduct. *See Becton v. Boatmen's Bank of Memphis*, 859 F.2d 152, 152 (6th Cir. 1988) (unpublished) (holding district court properly dismissed plaintiff's complaint despite not having made findings of fact regarding delay or contumacious conduct). Further, I respectfully disagree with the majority's position that our abuse-of-discretion inquiry is limited to the specific findings articulated by the district court at the time of dismissal. Our review is not so limited. The district court's failure to recite every example of plaintiff's counsel's impudent conduct[4] should not compel

---

[4] The record reveals that the district court granted defendant's motion for dismissal from the bench and drafted the dismissal order while waiting for plaintiff's counsel to appear at the pretrial hearing.

this court, under these facts, to conclude that the trial court committed a clear error of law. Here, the litigation record, to wit, the docket entries alone, are replete with examples of plaintiff's counsel's chronic delay. It is well-settled law that we "may affirm on any grounds supported by the record even if different from the reasons of the district court." *Dixon v. Clem*, 492 F.3d 665, 673 (6th Cir. 2007) (citing *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.,* 280 F.3d 619, 629 (6th Cir. 2002)).

As the majority properly notes, we apply a four-factor test, which I will refer to as the *Mulbah*[5] test, more stringently in cases where the court's rationale for dismissal is based solely on the plaintiff's attorney's conduct, as it is here. *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 367 (6th Cir. 1997).[6] In *Harris v. Callwood,* we acknowledged that "we [] frequently reverse[] district courts for dismissing cases because litigants failed to appear or to comply with pretrial orders when the district courts did not put the derelict parties on notice that further noncompliance would result in

---

[5] *Mulbah v. Detroit Bd. of Educ.,* 261 F.3d 586, 589 (6th Cir. 2001). We have recently referred to this four-factor test, first articulated in *Regional Refuge Sys. Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 155 (6th Cir. 1988) (superseded in part by FED. R. CIV. P. 37(c)(1)), as the *Mulbah* test, or the prongs as *Mulbah* factors, in a recent unpublished decision. *Muncy v. G.C.R., Inc.*, 110 F. App'x 552, 556 n.4 (6th Cir. 2004) (unpublished).

[6] This is not to suggest that plaintiff is completely without fault when his attorney engages in conduct that merits dismissal. As the Supreme Court of the United States stated in *Link v. Wabash Railroad Company*:

> [t]here is certainly no merit to the contention that dismissal of [plaintiff's] claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. [Plaintiff] voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.

370 U.S. 626, 633-34 (1962).

dismissal." 844 F.2d 1254, 1256 (6th Cir. 1988). We also noted, however, that "in the absence of notice that dismissal is contemplated, a district court should impose a penalty short of dismissal *unless* the derelict party has engaged in 'bad faith or contumacious conduct.'" *Id.* (emphasis added). As the *Mulbah* court itself stated, "a case may be dismissed by a district court where there is a clear record of delay or contumacious conduct on the part of the plaintiff." *Mulbah,* 261 F.3d at 591.

Thus, our past decisions suggest an inverse correlation between the degree of the offending party's bad faith, willful delay, or contumacious conduct and the need for a district court to provide notice of its intent to dismiss a plaintiff's complaint. *See Harris*, 844 F.2d at 1256 (extracting principle that in the absence of notice, court should impose penalty short of dismissal unless party has engaged in bad faith or contumacious conduct); *Bishop v. Cross,* 790 F.2d 38 (6th Cir. 1986) (reversing district court's involuntary dismissal where plaintiffs' attorney, but not plaintiffs themselves, was present for voir dire and counsel's failure to notify plaintiffs was inadvertent); *Rush v. McLendon*, 21 F.3d 428, 428 (6th Cir. 1994) (affirming dismissal of plaintiff's complaint where plaintiff failed to appear at the first day of trial with no explanation, but reversing district court's denial of motion for reconsideration where trial court did not properly consider plaintiff's explanation).

Here, the record supports the district court's involuntary dismissal without prior notice of its intent to dismiss because of the frequency and degree of plaintiff's counsel's bad faith, as evidenced by counsel's dilatory tactics and failure to properly substantiate any one of plaintiff's civil rights claims. Federal Rule of Civil Procedure 16(f) permits involuntary dismissal under Federal Rule of Civil Procedure 37(b)(2)(A)(v) when a party or its attorney fails to appear at a scheduling or other pretrial conference. *See* FED. R. CIV. P. 16(f)(1)(A). Federal Rule of Civil Procedure 41(b) permits

13

the court to involuntarily dismiss an action if a plaintiff fails to prosecute his case or to comply with court orders. The record provides ample evidence of plaintiff's counsel's violation of these rules.

For example, plaintiff did not serve defendants with interrogatories or requests for production, waited two-and-a-half months to answer defendants' interrogatories, requested a one-month extension, and then failed to comply with the agreed-to deadline. Defendants scheduled an independent medical exam for plaintiff on two occasions, and plaintiff failed to attend either appointment, costing defendants approximately $400 in medical fees. In addition, plaintiff paid case evaluation fees two months late, paid only when the court set a final deadline, and waited until the day of the deadline to pay the fee. Plaintiff's counsel also failed to cooperate with defendants when compiling the FED. R. CIV. P. 16(f) report and failed to file FED. R. CIV. P. 26(a)(1) disclosures, despite a court order requiring him to do so. Plaintiff's counsel was also several months late in providing voluntary disclosure documents. Most egregious was plaintiff's counsel's failure to depose a single witness in this case, including the police officer whom plaintiff accused of using excessive force – the only remaining claim at the time of dismissal. On the date defense counsel moved the court to dismiss plaintiff's complaint, plaintiff's counsel had not filed the required pretrial order and did not appear for the pretrial conference.[7] Plaintiff's counsel's actions, at a minimum, demonstrate "a reckless disregard for the effect of his conduct" on the underlying judicial proceedings. *See Wu v. T.W. Wang, Inc.,* 420 F.3d 641, 643 (6th Cir. 2005). Such a finding is sufficient to satisfy the first and third *Mulbah* prongs. *See Mulbah*, 261 F.3d at 592.

---

[7] Defendants also proffer, and plaintiff does not deny, that the trial court, at the time of dismissal, was familiar with plaintiff's counsel's reputation for strategic delay.

With respect to the second *Mulbah* factor, prejudice to the defendant, we have held that a party is prejudiced by a plaintiff's conduct where the defendant "wasted time, money, and effort in pursuit of cooperation which the plaintiff was legally obligated to provide." *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008) (citations omitted). Here, plaintiff's counsel's record of chronic delay and failures to appear, at both the scheduled medical appointments, as well as at the pretrial conference, is sufficient to satisfy the prejudice prong. *See id.*

The last *Mulbah* factor, which asks whether the district court could have imposed a less drastic sanction, is also satisfied. Here, although the trial court elected not to impose a lesser sanction, we "have never held that a district court is without power to dismiss a complaint, as the first and only sanction, solely on the basis of the plaintiff's counsel's neglect." *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997) (citations omitted). "[I]ndeed, any such rule would conflict with *Link* and . . . Federal Rule of Civil Procedure 37(b)(2). We are loathe to require the district court to incant a litany of the available lesser sanctions. . . . we [should] not assume that lesser sanctions were not considered simply because their consideration is not articulated." *Harmon*, 110 F.3d at 368 (internal citation and quotations omitted).

Thus, in light of the record and history of this case, I respectfully disagree that the facts upon which the exercise of the trial court's discretionary judgment was based demonstrate that the district court abused its discretion by dismissing plaintiff's complaint. *See Patel*, 445 F.3d at 906.

For these reasons, I respectfully dissent. I would affirm the order of the district court.