[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 8, 2010
JOHN LEY
CLERK

No. 09-12894
Non-Argument Calendar
_____

D. C. Docket No. 07-14267-CV-DLG

GLENN SMITH,

                                                          Plaintiff-Appellant,

versus

FLORIDA DEPARTMENT OF CORRECTIONS,
Walter A. McNeil, Secretary,
ARNP J. WADE,
in his individual capacity,
SGT SCOTT MURPHY,
in his individual capacity,
MAJOR T. SHEFFIELD,
in his individual capacity,

                                                          Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 8, 2010)

Before EDMONDSON, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Glenn C. Smith, a Florida state prisoner proceeding pro se, appeals the sua sponte dismissal of his 42 U.S.C. § 1983 civil rights action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. After review, we affirm.

## I. COMPLAINT ALLEGATIONS

### A. The Prison Infirmary

Smith, an inmate at the Okeechobee Correctional Facility ("the prison"), filed his pro se § 1983 complaint alleging Eighth Amendment, First Amendment, and Due Process claims against (1) James McDonough, the Secretary of Corrections for the Florida Department of Corrections, in his official capacity; and (2) J. Wade, a prison nurse practitioner, in his individual capacity, and (3) Sergeant Scott Murphy and Major T. Sheffield, correctional officers, in their individual capacities. We outline the allegations.

On July 21, 2004, a sheriff's deputy at the courthouse hit Smith, breaking his pelvis. The emergency room doctor told Smith "that there was nothing that could be done orthopedically, so [Smith] could not get out of bed for 5-7 days, although the doctor did not tell [Smith] any prognosis or treatment to follow that confinement to bed." An ambulance took Smith back to prison and he went

2

directly to a bed in the prison infirmary.

Defendant Nurse Wade was in charge of medical services in the prison infirmary.[1] For the next twelve days, Smith got out of bed only to go to the bathroom using a wheelchair. On August 2, 2004, Nurse Wade started Smith using a walker in the infirmary. Smith used the walker to move between the beds and to the bathroom. Due to pain, Smith could walk only between 50 and 150 feet before having to return to bed and could not put his full weight on his left leg. Smith increased his walks from three to six walks per day.

On August 4, 2004, Nurse Wade observed Smith take six steps using the walker and "commented about discharging [Smith] from the infirmary." Smith complained that due to his pain, it was not possible for him to walk more than about 150 feet and he could not possibly do all the walking that was required, or sleep on the hard mattresses, if he was discharged to the general population. Nurse Wade did not take X-rays of Smith's pelvis or examine the X-rays taken at the emergency room.

Later, another nurse, Nurse Ford, told Smith that he was released from the infirmary. When Smith protested, Nurse Ford gave Smith two medical passes: one

[1]While Smith was in the infirmary in July 2004, Nurse Wade was a named defendant in a pending § 1983 action Smith had filed in Florida state court on March 9, 2004. This § 1983 action concerned the treatment Smith received for a chronic itching condition.

for a lower bunk, lower tier cell assignment for one year and another for handicapped-meal seating for one month. Nurse Ford warned Smith that if he did not leave the infirmary, she would notify security. Smith asked Nurse Ford to inform Nurse Wade that he could not leave because he could not walk the distances required without extreme pain.

In response, Defendant Sergeant Murphy and another correctional officer came to the infirmary.[2] Sergeant Murphy ordered Smith to leave the infirmary. Smith twice repeated that he could not leave because he could not walk the distances in the open population. Sergeant Murphy asked Smith if he was refusing to leave the infirmary, and Smith responded, "Yes."

Sergeant Murphy returned with Defendant Major Sheffield. Smith repeated that he could not leave and said he needed a few more days in the infirmary to heal. Major Sheffield responded that Smith would be placed in administrative confinement pending a disciplinary report ("DR") for refusing to obey an order and "that would resolve [Smith's] having to deal with walking . . . and give him time to heal." Smith's complaint explains that administrative confinement involves 24-hours-a-day, seven-days-a-week cell lockdown with food brought to the cell.

---

[2]At the time, Sergeant Murphy was a named defendant in a pending § 1983 action that Smith had filed in Florida state court on September 9, 2003. This § 1983 action concerned disciplinary action taken against Smith, which Smith claimed was retaliatory harassment.

Major Sheffield had a wheelchair brought and ordered Smith into it. Smith in the wheelchair was taken to administrative confinement.

**B.      Administrative Confinement**

For the next three weeks in administrative confinement, Smith was prescribed "a modicum of ibuprofen for his pain," but "it was not enough to relieve it entirely." Smith had to sleep on a hard, thin mattress and woke up every hour or two due to "excruciating pain" in his back, pelvis and left leg. Smith "had to get up to move around, painfully walk with his walker, sit up for several minutes, and self-massage his lower back until the pain abated to a degree that [he] could lay down again to sleep for a while." Smith filed "grievances of a medical nature" on August 5 and 6, 2004 "concerning his problems," but nothing was done to alleviate them. Smith walked with the walker, and later without it, in his cell and to his shower three times a week "as his entire rehabilitative regimen." When released from administrative confinement, Smith could walk the distances required in the open population only slowly and painfully.

**C.      Disciplinary Report**

On August 11, 2004, Smith received a DR prepared by Sergeant Murphy. The DR charged Smith with refusing to leave the infirmary after repeatedly being ordered by Sergeant Murphy to do so. After a DR hearing, Smith was found guilty

5

of disobeying Sergeant Murphy's order and given thirty days in disciplinary confinement.[3] Smith appealed the ruling, arguing, <u>inter alia</u>, that the order to leave the infirmary was illegal, unconstitutional and not based on sound medical judgment. Smith contended that the order and ensuing DR were retaliation for the pending civil suits Smith had already filed against Sergeant Murphy and Nurse Wade.[4] Smith's institutional appeal and appeal to the Secretary of Corrections were denied.

**D.    Smith's Complaint**

Smith's complaint alleges that: (1) Nurse Wade, Sergeant Murphy and Major Sheffield violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs, (2) Sergeant Murphy's DR was in retaliation for Smith's exercise of his First Amendment rights, including prior

---

[3]The DR attached to Smith's complaint does not cite the rule Smith was charged with violating. Smith contends that he was found guilty of violating Florida Administrative Code Rule 33-601.314, § 6-1, which imposes a punishment of thirty days in disciplinary confinement and takes away sixty days of gain time if an inmate disobeys "any order given to an inmate or inmates by a staff member or other authorized person."

[4]Smith's complaint states that he filed over fifty-five actions in federal and state court over the past five years. The district court noted that Smith filed at least ten actions in the Southern District of Florida in the past three years and that the district court has entered an order, pursuant to 28 U.S.C. § 1915(g), in Case No. 06-CV-14066, prohibiting Smith from petitioning to proceed <u>in forma pauperis</u> before any court in the United States. At least four of Smith's federal actions have been appealed to this Court. <u>See</u> <u>Smith v. Sec'y, Dep't of Corrs.</u>, No. 09-11423, 2009 WL 4893301 (11th Cir. Dec. 21, 2009); <u>Smith v. Sec'y, Dep't of Corrs.</u>, 318 F. App'x 726 (11th Cir. 2008); <u>Smith v. Sec'y, Dep't of Corrs.</u>, 286 F. App'x, 682 (11th Cir. 2008); <u>Smith v. Sec'y, Dep't of Corrs.</u>, 252 F. App'x 301 (11th Cir. 2007).

lawsuits he filed against Nurse Wade and Sergeant Murphy and his protest about his discharge from the infirmary; (3) Florida Department of Corrections's "disobeying any order" rule was vague, overbroad and facially unconstitutional under the Due Process Clause; and (4) numerous due process violations occurred in connection with Smith's DR hearing.

**B.      Dismissal for Failure to State a Claim**

The district court granted Smith leave to proceed in forma pauperis. A magistrate judge conducted an initial screening of Smith's complaint pursuant to 28 U.S.C. § 1915. The magistrate judge's report ("R&R") recommended that Smith's complaint be dismissed, pursuant to § 1915(e)(2)(B)(ii), for failure to state a claim because it: (1) did not state a First Amendment retaliation claim because Smith admittedly disobeyed the order that resulted in the DR and Smith's complaint did not allege facts showing a causal link between Smith's First Amendment activity and the valid DR; (2) did not state a due process claim as to the disciplinary proceedings because thirty days in insolation is not an excessive, atypical or significant hardship that would implicate the Due Process Clause; (3) did not state a claim that the "disobeying any order" rule is unconstitutionally vague and overbroad because that rule is necessary to preserve order and discipline in the prison; and (4) did not state an Eighth Amendment claim because Smith's

7

allegations at most established negligence and not deliberate indifference to his serious medical needs.

Smith filed objections to the R&R. The district court approved the R&R and dismissed Smith's complaint. The district court noted that the complaint's allegations established that: (1) Smith received treatment consistent with that recommended by the emergency room doctor and, thus, the order to leave the infirmary was not illegal; and (2) the refusal to give Smith a few more days of bed rest in the infirmary to heal was a disagreement with the course of medical treatment that did not rise to the level of deliberate indifference. Smith filed this appeal.

## II. DISCUSSION

### A.    28 U.S.C. § 1915(e)(2)(B)(ii)

The district court must dismiss a case filed in forma pauperis at any time if it determines that the action "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). A dismissal under § 1915(e)(2)(B)(ii) is governed by the same standard as a dismissal under Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). Dismissal for failure to state a claim is appropriate when the facts as pled do not state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937,

1950 (2009) (Rule 12(b)(6) dismissal); Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008) (Section 1915(e)(2)(B)(ii) dismissal). "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed . . . . But, issues not raised below are normally deemed waived." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). After liberally construing Smith's complaint, we find no reversible error in the dismissal.[5]

## B.    Eighth Amendment Medical Treatment Claim

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976). However, not every claim by a prisoner that he has not received adequate medical treatment will state an Eighth Amendment violation. Id. at 105, 97 S. Ct. at 291. To state a claim of deliberate indifference, the plaintiff must allege both an objectively serious medical need and the subjective intent of deliberate indifference. Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). We agree with the district court that Smith's alleged broken pelvis is an objectively serious medical need.

---

[5]We review de novo a district court's sua sponte dismissal for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and take the well-pleaded factual allegations in the complaint as true. Mitchell v. Farcass, 112 F.3d 1483, 1489-90 (11th Cir. 1997).

9

Thus, the issue on appeal is whether Smith sufficiently alleged the subjective component of deliberate indifference. "To establish the second element, deliberate indifference to the serious medical need, the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." Id. "[A] simple difference in medical opinion between the prison's medical staff and the inmate" regarding the course of treatment does not state an Eighth Amendment claim. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). Thus, "whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (quotation marks omitted).

Here, Smith's complaint alleges at most medical malpractice and not deliberate indifference. Smith's own allegations establish that his broken pelvis could not be treated orthopedically, that Smith needed to remain in bed for five to seven days, that Smith received at least twelve days of bed rest in the infirmary and two additional days during which he began walking with a walker, that at the time of his discharge he could walk, albeit painfully, with the walker for up to 150 feet. Smith asserts that Nurse Wade should have taken additional X-rays. However,

10

Smith's claim rests on his difference of opinion with the prison medical staff over the course of his treatment, which does not rise to the level of an Eighth Amendment violation.[6] And, because Nurse Wade's decision to discharge Smith after fourteen days in the infirmary does not constitute deliberate indifference to Smith's medical needs, the alleged actions of Sergeant Murphy and Major Sheffield in enforcing that decision also do not rise to the level of deliberate indifference. See Estelle, 429 U.S. at 104, 97 S. Ct. at 291 (explaining that allegations that prison guards intentionally denied or delayed access to medical care or interfered with treatment once prescribed states an Eighth Amendment deliberate indifference claim). The district court properly dismissed Smith's Eighth Amendment claim.

## C.     First Amendment Retaliation Claim

Under the First Amendment, a prison official may not retaliate against an inmate for exercising his free speech rights, which includes complaining about the conditions of confinement and filing prison grievances. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). To state a First Amendment retaliation claim, a plaintiff must show: (1) "that his speech or act was constitutionally protected"; (2)

---

[6]Smith's argument that the Defendants' alleged actions amounted to no treatment at all is contradicted by his complaint, in which he alleged he remained in bed for twice as long as was recommended by the emergency room doctor and received ibuprofen after he was discharged from the infirmary.

"that the defendant's retaliatory conduct adversely affected the protected speech;" and (3) "that there is a causal connection between the retaliatory actions and the adverse effect on speech." Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005).

Accepting the allegations in Smith's complaint as true, Sergeant Murphy ordered Smith to leave the infirmary and Smith refused, even when warned that to do so would result in disciplinary action. Sergeant Murphy then prepared a disciplinary report and the disciplinary team subsequently found Smith guilty of a rule violation because he admittedly failed to obey an order to leave the infirmary. Smith's complaint makes only conclusory allegations of a retaliatory motive; it does not allege facts sufficient to raise that conclusion above the speculative level. See Iqbal, 556 U.S. at ___, 129 S. Ct. at 1951 (explaining that conclusory allegations are not entitled to a presumption of truth); Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1266 (11th Cir. 2009) (stating that "in testing the sufficiency of the plaintiff's allegations, we do not credit . . . conclusory allegations as true"); Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1278 (11th Cir. 2005) (concluding that conclusory allegations are not "well-pleaded factual allegations" that must be accepted as true).

Indeed, Smith's retaliation claim, as alleged, does not involve a fabricated

12

disciplinary report. Rather, Smith's complaint admits that he did not comply with Sergeant Murphy's order to leave the infirmary, but counters that he was justified in doing so. This is not a sequence of events from which one could, without more, plausibly infer a retaliatory motive. See Cain v. Lane, 857 F.2d 1139, 1141-43 (7th Cir. 1988) (noting that not every disciplined prisoner who has filed a lawsuit will state claim of retaliation and that the prisoner "must allege a chronology of events from which retaliation may plausibly be inferred"). Given that the well-pleaded facts in Smith's complaint establish that the motive for Smith's discipline was his failure to obey Sergeant Smith's order, the district court properly dismissed Smith's First Amendment retaliation claim.[7]

---

[7]We also reject Smith's claim that his due process rights were violated by his administrative/disciplinary confinement. Although Smith's complaint alleged a number of ways in which administrative and disciplinary confinement differs from confinement in the general population, he was subject to those conditions only for thirty days. See Sandin v. Conner, 515 U.S. 472, 486, 115 S.Ct. 2293, 2301 (1995) (concluding thirty days of disciplinary confinement did not give rise to a protected liberty interest); Rodgers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998) (concluding two months in administrative confinement did not constitute a deprivation of a constitutionally protected liberty interest). We also note that the allegations in Smith's complaint indicate that the conditions in disciplinary confinement essentially are the same as the conditions in administrative confinement. Additionally, Smith's complaint does not allege that he was singled out for harsher treatment than is generally accorded prisoners in administrative or disciplinary confinement.

On appeal, Smith raises two new arguments: (1) that defendants cannot avoid due process claims by labeling his confinement administrative rather than disciplinary, and (2) that this Court should adopt the rule that any confinement that results from retaliation is automatically an atypical and significant hardship. We do not address these arguments because they were not raised in the district court. See Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (noting that issues not raised below are normally deemed waived on appeal).

**D.     Constitutionality of Florida Administrative Code Rule 33-601.314, § 6-1**

Smith argues that Florida Administrative Code Rule 33-601.314, § 6-1, the "disobeying any order" rule, is vague, overbroad and unconstitutional on its face under the four-factor test outlined in Turner v. Safley, 482 U.S. 78, 89-91, 107 S. Ct. 2254, 2262 (1987).  Smith has raised this challenge twice in this Court, and twice this Court has rejected it.  See Smith, 2009 WL 4893301, at *3; Smith, 318 F. App'x at 729.  We reject it for a third time for the reasons stated in these two prior opinions.  Additionally, because Smith's complaint establishes that he was disciplined for his admitted failure to comply with Sergeant Murphy's order and not for an arbitrary or retaliatory reason, Smith failed to state a claim that the rule is unconstitutional as applied to him.

### III. CONCLUSION

For the forgoing reasons, the district court did not err in dismissing Smith's in forma pauperis complaint for failure to state a claim on which relief may be granted pursuant to § 1915(e)(2)(B)(ii).[8]

**AFFIRMED.**

---

[8] We reject Smith's argument that the district court abused its discretion in denying Smith's Rule 59(e) motion to alter or amend the judgment because it merely reiterated the same legal arguments Smith presented in his objections to the magistrate judge's R&R.  See Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007) (explaining that a Rule 59(e) motion cannot be used to relitigate matters that already have been considered or to raise arguments or present evidence that could have been raised before the judgment was entered).