# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 30, 2010

No. 10-30607
Summary Calendar

Lyle W. Cayce
Clerk

LINDA A. THOMAS,

Plaintiff - Appellant

v.

STATE OF LOUISIANA, Department of Social Services,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:08-cv-04977

Before KING, BENAVIDES, and ELROD, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Linda A. Thomas was terminated from her employment with Defendant-Appellee the Louisiana Department of Social Services. Thomas sued the defendant, alleging, *inter alia*, that she was terminated in violation of Title VII. The District Court for the Eastern District of Louisiana granted defendant's motion for summary judgment on all of Thomas's claims. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-30607

## I. FACTUAL AND PROCEDURAL BACKGROUND

Thomas was employed by the Terrebonne Parish Office of Family Support of the Louisiana Department of Social Services ("DSS"). Thomas's employment responsibilities at DSS included determining applicants' eligibility for state financial assistance and issuing electronic benefits transaction ("EBT") cards, which qualified applicants used to purchase groceries.

On November 1, 2007, Thomas received a letter from DSS stating that her employment was terminated, effective November 8, 2007. DSS stated that Thomas had been terminated because she had violated DSS policy by improperly authorizing benefits for family members and friends.

Thomas appealed her dismissal to the Louisiana Civil Service Commission ("CSC"). The CSC determined that her dismissal was proper because she "performed unauthorized computer transactions resulting in the wrongful issuance of food stamp benefits to her nephew, niece and live in boyfriend and . . . she certified and activated a disaster food stamps EBT card through use of her daughter's social security number."

Thomas then filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In her charge, she claimed that DSS had discriminated against her because of her race in violation of Title VII and in retaliation for complaints about matters protected by Title VII. On July 21, 2008, the EEOC sent Thomas a "right to sue" letter, which notified her that it had dismissed her charge and that she had ninety days to commence a lawsuit against DSS.

On October 17, 2008, Thomas commenced the instant litigation against DSS in Louisiana state court. She alleged that: (1) while working for DSS, she had "experienced continuous racial, religion, and sex discrimination;" (2) DSS "retaliated, and used reprisal against the plaintiff;" (3) DSS had her falsely arrested and falsely imprisoned for theft; (4) DSS defamed her by wrongly

No. 10-30607

accusing her of theft; and (5) she had been wrongfully terminated in retaliation for disclosing improper acts by DSS employees in violation of the Louisiana whistleblower statute, Louisiana Revised Statutes ("L.R.S.") § 42:1169.

DSS removed Thomas's entire claim to the District Court for the Eastern District of Louisiana on the basis of federal question jurisdiction, noting that one of claims in Thomas's complaint arose under Title VII.[1]  After Thomas's complaint was removed to federal court, she was charged with criminal theft from DSS, and the proceedings in Thomas's civil suit were stayed pending the outcome of her criminal trial.  On September 16, 2009, Thomas was found guilty of misdemeanor theft.  Thomas was sentenced to a short jail term, placed on twelve months' supervised probation, and ordered to pay $2,133.00 in restitution to DSS.

Once Thomas's civil trial resumed, DSS moved for summary judgment on all of her claims.  DSS argued that Thomas could not establish a prima facie case on any of her claims because she had been terminated for good cause.  DSS also argued that Thomas was precluded from re-litigating the cause of her dismissal under the doctrines of claim preclusion and issue preclusion.[2]  Finally, DSS argued that the district court lacked subject matter jurisdiction to hear Thomas's whistleblower claim because such claims may only be heard by the Louisiana Board of Ethics.

The district court granted DSS's motion for summary judgment on all of Thomas's claims, wholly adopting the Order and Reasons on Motion of the

---

[1]  Title VII of the Civil Rights Act of 1964 ("Title VII") is codified at 42 U.S.C. §§ 2000e–e-17.  Under Title VII, it is unlawful for an employer to "discharge any individual . . . because of such individual's race, color, religion, gender, sex, or national origin." § 2000e-2(a)(1).

[2]  The legal concepts of claim preclusion and issue preclusion are both codified under a Louisiana statute entitled "Res Judicata," L.R.S. § 13:4231.  To avoid confusion, we refer to traditional *res judicata* as claim preclusion and collateral estoppel as issue preclusion.

No. 10-30607

magistrate judge. Addressing Thomas's federal retaliation and discrimination claims, the magistrate judge applied the test articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The magistrate judge concluded that DSS had provided a legitimate, non-discriminatory reason for her termination because it presented evidence that Thomas had been terminated for theft. The magistrate judge concluded that Thomas had not met her burden of producing evidence that this reason was a pretext for discrimination or retaliation. The magistrate judge also concluded that Thomas had not come forward with sufficient evidence to create a triable issue of fact on her state law claims. The magistrate judge did not reach DSS's preclusion and subject matter jurisdiction arguments. Thomas appealed, *pro se*,[3] arguing that the district court erred in granting DSS's motion for summary judgment.

## II. STANDARD OF REVIEW

This court reviews "an order granting summary judgment *de novo*, applying the same standards as the district court" and viewing evidence "in the light most favorable to the non-moving party." *Compliance Source, Inc. v. GreenPoint Mortg. Funding, Inc.*, 624 F.3d 252, 258 (5th Cir. 2010) (internal citations and quotation marks omitted). Summary judgment is proper when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## III. ANALYSIS

Thomas argues that the district court erred in granting summary judgment on all of her claims against DSS. We first address her federal claims and then address her claims under Louisiana state law.

---

[3] Thomas was represented by counsel before the district court.

No. 10-30607

## A. Thomas's Federal Claims

### 1. Waiver

The only federal claims Thomas has preserved for appeal are her Title VII racial discrimination and her retaliation claims.  In her complaint, Thomas stated she that had "experienced continuous racial, religion, and sex discrimination," and that DSS had "retaliated, and used reprisal against the plaintiff and has a pattern and practice of . . . allowing racial, sex, and age motivate[d] working conditions."  Thomas's appellate brief, however, mentions only retaliation and racial discrimination.  Although this court liberally construes the briefs of *pro se* litigants, such litigants must nonetheless brief an issue to preserve it for appeal.  *Longoria v. Dretke*, 507 F.3d 898, 901 (5th Cir. 2007).  Because Thomas discussed only retaliation and racial discrimination in her brief before this court, she has abandoned her claims of religious, gender, and age discrimination.

### 2. Claim Preclusion

DSS argues that the doctrine of claim preclusion prevents Thomas from re-litigating the reason for her termination in her remaining claims. DSS points to three prior adjudications of Thomas's federal claims.  First, a CSC referee found her termination was justified. The CSC denied the application for review of the referee's decision, and it became a final decision of the CSC.  Second, an administrative law judge denied Thomas's claim for unemployment benefits because she was terminated for misconduct.  This decision was affirmed by the state trial court.  Third, Thomas was convicted in Louisiana state court for theft from DSS.

Because the judgments in this case were rendered by Louisiana courts and agencies, Louisiana law governs the preclusive effect of those judgments.  *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 436 (5th Cir. 2000).  Under Louisiana law,

5

[e]xcept as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:

. . . .

(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

L.R.S. § 13:4231 (2006).

An administrative decision involving Title VII claims that is not reviewed by a state or federal court may not preclude a subsequent Title VII claim. *See Univ. of Tenn. v. Elliott*, 478 U.S. 788, 796 (1986) ("Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims."). It is not clear from the record before us whether Thomas appealed the CSC ruling that her termination was justified to the state court. Accordingly, we decline to give the CSC ruling preclusive effect.

We also decline to give preclusive effect to the decision of the administrative law judge denying Thomas unemployment benefits. A finding of law or fact made in determining eligibility for unemployment benefits

shall not be used as conclusive evidence in any separate or subsequent action or proceeding between an individual and his or her present or prior employer brought before an arbitrator, court, or judge of the state of Louisiana or the United States, regardless of whether the prior action was between the same or related parties or involved the same facts.

No. 10-30607

L.R.S. § 23:1636.  There is no dispute that the instant action is separate from Thomas's claim for unemployment benefits.  Therefore, these claims are not barred by the administrative law judge's decision denying her those benefits.

Finally, Thomas's criminal conviction for theft does not preclude her Title VII racial discrimination and retaliation claims.  The plaintiff and defendant in both suits must be identical for the subsequent claim to be precluded. *Burguieres v. Pollingue*, 843 So. 2d 1049, 1054 (La. 2003).  The parties need not share the same "physical identity," but "must appear in the same capacities in both suits" for a final judgment in the first litigation to preclude a second suit. *Id.*  Nonetheless, DSS was not a "party" to Thomas's criminal trial for purposes of claim preclusion.  DSS's role in Thomas's criminal prosecution was that of a victim; it did not prosecute her for her theft and the ultimate responsibility for proving her guilt did not rest with DSS.  *See Hawthorne v. Couch*, 946 So.2d 288, 296–7 (La. Ct. App. 2006) (concluding that claim preclusion did not apply to a party on whose behalf prior lawsuit was brought, but who was not a party in any capacity in the prior lawsuit).  In Thomas's civil suit, by contrast, DSS itself must justify Thomas's termination because a seemingly legitimate reason for termination, like theft, does not insulate it from liability for that termination if it is a pretext for an illegal employment action.  *See McDonnell Douglas*, 411 U.S. at 805.  Thus, claim preclusion does not bar Thomas's Title VII racial discrimination and retaliation claims.

*3.  Issue Preclusion*

DSS also argues that Thomas's criminal conviction for theft precludes her from re-litigating whether she violated DSS policy and whether good cause existed to terminate her.  Under Louisiana's doctrine of issue preclusion a "judgment in favor of either the plaintiff or defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment."  L.R.S.

7

§ 13:4231(3).   To be guilty of theft a defendant must "misappropriat[e] or tak[e] . . . anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct" with "[a]n intent to deprive the other permanently."   L.R.S. § 14:67.

DSS must prove that Thomas's violation of DSS policy and DSS's justification for firing Thomas were essential to her criminal conviction and actually litigated in her criminal trial.   Given the language of the statute under which Thomas was convicted, the Louisiana state court necessarily found that Thomas misappropriated or took DSS property without DSS's consent or by fraudulent conduct.   Although the criminal trial may have addressed whether Thomas had violated DSS policy and whether DSS terminated her for cause, neither finding would have been essential to finding her guilty of theft from DSS. Furthermore, DSS has not in any way demonstrated that Thomas actually litigated her violation of DSS policy or DSS's justification for terminating her in the criminal trial.   Therefore, we conclude that Thomas's criminal conviction does not preclude her from re-litigating whether she had violated DSS policy and whether she had been terminated for cause.   *See Kelty v. Brumfield*, 633 , 633 So. 2d 1210, 1215 (La. 1994) ("The doctrine of [claim and issue preclusion] cannot be invoked unless all its essential elements are present, . . . and each necessary element must be established beyond all question."   (internal citations omitted)).

*4. Thomas's Title VII Discrimination and Retaliation Claims*

There is no dispute that Thomas's remaining claims under Title VII are governed by the *McDonnell Douglas* burden-shifting framework applied by the magistrate judge.   Under the *McDonnell Douglas* framework, the plaintiff bears "the initial burden . . . of establishing a prima facie case of racial discrimination." 411 U.S. at 802.   "The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection."   *Id*.   If the employer meets this burden, then the plaintiff must "demonstrate by competent

evidence that the presumptively valid reasons for his rejection were in fact a coverup for a racially discriminatory decision." *Id.* at 805.

To establish a prima facie case of racial discrimination, Thomas must establish that she

> (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, . . . that other similarly situated employees were treated more favorably.

*Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004).  As evidence that her termination was racially motivated, Thomas notes that the DSS administrator for her office, Ms. Bonnie Rehage, "segregated [her] from other black co-workers, by putting [her] in a room with all White co-workers." Thomas also alleges that Rehage failed to reprimand two white co-workers who were involved in a dispute with Thomas.

DSS did not dispute that Thomas stated a prima facie case of racial discrimination because it "did not wish to list the elements necessary for plaintiff to establish a prima facie case."  Instead, DSS provided the district court with a legitimate, non-discriminatory reason for Thomas's termination: her improper processing of benefits for family members and her live-in boyfriend in violation of DSS policy. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (a violation of employer's written policies that could result in termination is a legitimate, non-discriminatory reason for termination under Title VII). Thus, the burden shifted back to Thomas to prove that DSS's rationale for her termination was a pretext for its allegedly racially motivated decision to terminate her.

Thomas has not met this burden.  She has not provided any evidence from which the district court could conclude that she was replaced with someone outside of her protected class. Nor has Thomas presented any evidence that DSS

retained similarly situated employees who had violated the same or similar DSS policies, which would be necessary to establish a disparate treatment claim. *See Wallace*, 271 F.3d at 221 ("We have held that in order for a plaintiff to show disparate treatment, she must demonstrate that the misconduct for which she was discharged was nearly identical to that engaged in by an employee not within her protected class whom the company retained." (citation and internal quotation marks omitted)).

Thomas did allege that Rehage sided against her in a dispute with white co-workers. However, Thomas does not claim that she suffered an adverse employment action as a result of this dispute. Instead, she cryptically hints at testimony she will produce at trial from co-workers "about the goings on at the Terrebonne Office of Family Support." Even read broadly, this statement is not sufficient to create a genuine issue of material fact as to whether her termination was the result of racially motivated employment discrimination in violation of Title VII. *See Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996) ("It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason."). Therefore, the district court properly granted DSS's motion for summary judgment on Thomas's Title VII racial discrimination claim.

To establish a prima facie case of retaliation for opposing DSS's discriminatory practices, Thomas must prove that (1) she "engaged in protected activity"; (2) she "suffered an adverse employment decision"; and (3) "a causal link exists between the protected activity and the adverse employment decision." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001). Thomas claims her termination was in retaliation for filing a grievance against her supervisors and for being part of a potential class action lawsuit against several

DSS supervisors for harassment of DSS employees. Rehage was named in the grievance and subsequently became the administrator of the DSS office where Thomas worked. Thomas claims that, in retaliation for the grievance Thomas filed against her, Rehage initiated the investigation that resulted in her termination.

As with Thomas's racial discrimination claim, DSS does not argue that Thomas has failed to make a prima facie case of retaliation, but rather justifies her termination by stating that Thomas violated DSS policy. This meets DSS's burden of stating a legitimate, non-discriminatory reason for termination. *See Anderson v. Douglas & Lomason Co., Inc.*, 26 F.3d 1277, 1301–02 (5th Cir. 1994).

Thomas again fails to meet her burden of demonstrating that DSS's stated reason for her termination was merely a pretext for retaliatory termination. Thomas has not pointed to any evidence that DSS retained other employees who violated similar policies and filed grievances against DSS administrators and supervisors. *See id.* Therefore, the district court properly granted DSS's motion for summary judgment on Thomas's retaliation claim.

## B. Thomas's Louisiana State Law Claims

### 1. Thomas's False Arrest and False Imprisonment Claims

Thomas argues that the district court erred in granting DSS's motion for summary judgment on her false arrest and false imprisonment claims. DSS correctly counters that those claims are barred by the favorable termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a plaintiff was barred from bringing a claim under 42 U.S.C. § 1983 that would challenge the validity of an outstanding criminal conviction when such a claim would "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Heck*, 512 U.S. at 486. Instead, a plaintiff could only bring a § 1983 claim challenging the constitutionality of her conviction or sentence if she proved "that the conviction or sentence has been reversed on

direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a district court's issuance of a writ of habeas corpus." *Id.* at 487. Thomas has never contested the fact of her criminal conviction and has not presented any evidence that it was terminated in her favor. Furthermore, her claims for false arrest and false imprisonment against DSS would necessarily require the district court to re-evaluate the lawfulness of her arrest and criminal conviction because proof of those claims requires proof that both were unlawful. *See Harrison v. State Through Dept. of Pub. Safety & Corrs.*, 721 So. 2d 458, 461 (La. 1998). Thus, the favorable termination rule bars her state law false imprisonment and false arrest claims.[4]

Nevertheless, Thomas urges us not to apply the favorable termination rule to her complaint because "she is no longer in prison and has already served her term." This argument is unavailing, however, because this circuit applies the favorable termination rule even when the plaintiff is no longer in custody. *See Randell v. Johnson*, 227 F.3d 300, 301–02 (5th Cir. 2000) (per curiam).[5]

---

[4] Although *Heck* applied to a claim under 42 U.S.C. § 1983 for unconstitutional imprisonment, Thomas has never argued that it does not apply with equal force to state law claims. Therefore, she has "waived any argument that [her] state-law claims should be addressed apart from *Heck*." *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 652 n.3 (5th Cir. 2007).

Assuming the favorable termination rule does not bar Thomas's state law claims for false arrest and false imprisonment, the district court's judgment was still proper. The torts of false arrest and false imprisonment both require Thomas to prove that she was detained and that the detention was unlawful. *Harrison*, 721 So. 2d at 461, 465 n.9. As DSS rightly points out, Thomas cannot state a claim for either false arrest or false imprisonment because she was convicted of the crime for which she was arrested and imprisoned. *See id.* at 465 n.9 ("[A] person who provides the police with accurate information upon which the police exercise judgment is not liable for false arrest."); *Restrepo v. Fortunato*, 556 So. 2d 1362, 1363 (La. Ct. App. 1990) ("As [plaintiff] was convicted of the crime for which he was arrested and indicted, and the conviction was affirmed by this court, he cannot show that his detention was unlawful.").

[5] In *Randell*, we noted that several other circuits do not apply *Heck*'s favorable termination rule when the plaintiff is no longer in custody. 277 F.3d at 301. The Supreme

No. 10-30607

### 2. *Thomas's Defamation Claim*

In her complaint, Thomas stated that she "was wrongly accused of theft and was slandered and defamed as a result." In its motion for summary judgment, DSS argued that Thomas could not make out a prima facie case for defamation because any statements regarding Thomas's theft of DSS property were true. *See* L.R.S. § 13:3602 ("it shall be lawful for the defendant to plead in justification the truth of the slanderous, defamatory or libelous words or matter"). Thomas's attorney did not address this argument—or otherwise assert a defamation claim—in Thomas's response to DSS's motion for summary judgment, thereby waiving any argument that statements regarding her theft were false. *See, e.g., Keenan v. Tejada*, 290 F.3d 252, 262 (5th Cir. 2002) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." (citation and internal quotation marks omitted)). Therefore, the district court properly granted DSS's motion for summary judgment on her defamation claim.

### 3. *Thomas's Louisiana Whistleblower Claim*

Thomas's complaint alleged that DSS had violated L.R.S. § 42:1169 when it fired Thomas in retaliation for her testimony against DSS employees. In its motion for summary judgment, DSS argued that the district court lacked subject matter jurisdiction over Thomas's claim under L.R.S. § 42:1169 because that statute does not provide for a private right of action. In Thomas's response, she conceded that L.R.S. § 42:1169 "may only provide an administrative remedy." Thomas makes an identical concession in her brief before this court, so we need not address whether Thomas had a valid claim under that statute.

---

Court has suggested that this issue is unsettled. *See Muhammad v. Close*, 540 U.S. 749, 752 n.2 (2004). Regardless of this uncertainty, *Randell* remains good law in this circuit, and we share its reluctance to "announce for the Supreme Court that it has overruled one of its decisions." *Randell*, 227 F.3d at 301.

No. 10-30607

In response to DSS's motion for summary judgment, Thomas also argued that "public employees could also have a valid cause of action under [L.R.S. §] 23:967." Section 23:967 prohibits an employer from taking "reprisal against an employee." However, as defined by statute, "reprisal" does not "prohibit an employer from enforcing an established employment policy, procedure, or practice or exempt an employee from compliance with such." L.R.S. § 23:967(C)(1). As DSS points out, the reason for Thomas's termination was her violation of DSS policy. Thomas has not disputed her violation of these policies beyond conclusory statements in her pleadings here and below. Nor has she stated how she is otherwise entitled to relief under L.R.S. § 23:967. Therefore, the district court properly granted DSS's motion for summary judgment on Thomas's whistleblower claim.

## IV. CONCLUSION

For the above reasons, we AFFIRM the judgment of the district court granting DSS's motion for summary judgment on all of Thomas's claims.

14