## MUHAMMAD, AKA MEASE *v.* CLOSE

No. 02–9065.   Argued December 1, 2003—Decided February 25, 2004

*Corinne Beckwith,* by appointment of the Court, 539 U. S. 925, argued the cause for petitioner. With her on the brief were *James W. Klein, Samia Fam,* and *Giovanna Shay.*

*Thomas L. Casey,* Solicitor General of Michigan, argued the cause for respondent. With him on the briefs were *Michael A. Cox,* Attorney General, and *Linda M. Olivieri* and *Kevin Himebaugh**

PER CURIAM.

I

Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U. S. C. § 2254, and a complaint under the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U. S. C. § 1983. Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus, *Preiser* v. *Rodriguez,* 411 U. S. 475, 500 (1973); requests for relief turning on circumstances of confinement may be presented in a § 1983 action. Some cases are hybrids, with a

___

*Alphonse A. Gerhardstein* filed a brief for the Prison Reform Advocacy Center as *amicus curiae* urging reversal.

prisoner seeking relief unavailable in habeas, notably damages, but on allegations that not only support a claim for recompense, but imply the invalidity either of an underlying conviction or of a particular ground for denying release short of serving the maximum term of confinement. In *Heck* v. *Humphrey*, 512 U. S. 477 (1994), we held that where success in a prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence. Accordingly, in *Edwards* v. *Balisok*, 520 U. S. 641 (1997), we applied *Heck* in the circumstances of a § 1983 action claiming damages and equitable relief for a procedural defect in a prison's administrative process, where the administrative action taken against the plaintiff could affect credits toward release based on good time served. In each instance, conditioning the right to bring a § 1983 action on a favorable result in state litigation or federal habeas served the practical objective of preserving limitations on the availability of habeas remedies. Federal petitions for habeas corpus may be granted only after other avenues of relief have been exhausted. 28 U. S. C. § 2254(b)(1)(A). See *Rose* v. *Lundy*, 455 U. S. 509 (1982). Prisoners suing under § 1983, in contrast, generally face a substantially lower gate, even with the requirement of the Prison Litigation Reform Act of 1995 that administrative opportunities be exhausted first. 42 U. S. C. § 1997e(a).

*Heck*'s requirement to resort to state litigation and federal habeas before § 1983 is not, however, implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence.[1] There is no need to

---

[1] The assumption is that the incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction, not special disciplinary confinement for infraction of prison rules. This Court has never followed the speculation in *Preiser* v. *Rodriguez*, 411 U. S. 475, 499 (1973), that such a prisoner subject to "additional and unconstitutional

preserve the habeas exhaustion rule and no impediment under *Heck* in such a case, of which this is an example.[2]

## II

### A

This suit grew out of a confrontation between petitioner, Muhammad, an inmate, and the respondent Michigan prison official, Close. App. 70. According to his amended complaint, Muhammad was eating breakfast when he saw Close "staring at him through the hallway window." *Id.*, at 71. Eventually Muhammad stared back, provoking Close to assume "a fighting stance" and "com[e] into the dining area at a fast pace with his face contorted." *Ibid.* Muhammad stood up and faced him, and when the two were within a foot of one another, Close asked, "whats *[sic]* up," all the while "staring angerly *[sic].*" In the aftermath of the confrontation, Muhammad was handcuffed, taken to a detention cell, and charged with violating the prison rule prohibiting "Threatening Behavior." (Emphasis deleted.)[3] Under the rules, special detention was required prior to a hearing on the charge, which occurred six days later. Muhammad was acquitted of threatening behavior, but found guilty of the lesser infraction of insolence, for which prehearing detention would not have been mandatory.[4] *Ibid.* Muhammad was

---

restraints" might have a habeas claim independent of §1983, and the contention is not raised by the State here.

[2] Members of the Court have expressed the view that unavailability of habeas for other reasons may also dispense with the *Heck* requirement. See *Heck* v. *Humphrey*, 512 U. S. 477, 491 (1994) (SOUTER, J., concurring in judgment); *Spencer* v. *Kemna*, 523 U. S. 1, 21–22 (1998) (GINSBURG, J., concurring). This case is no occasion to settle the issue.

[3] The Michigan Department of Corrections Policy Directive, No. 03.03.105 (June 6, 1994) (Directive), defines "Threatening Behavior" as "Words, actions or other behavior which expresses a[n] intent to injure or physically abuse another person." App. 40 (emphasis deleted).

[4] The Directive defines "Insolence" as "Words, actions, or other behavior which is intended to harass, or cause alarm in an employee." *Id.*, at 44 (emphasis deleted).

required to serve an additional 7 days of detention and deprived of privileges for 30 days as penalties for insolence. *Ibid.*

Muhammad then brought this § 1983 action, alleging that Close had charged him with threatening behavior (and subjected him to mandatory prehearing lockup) in retaliation for prior lawsuits and grievance proceedings against Close. *Id.,* at 72. He amended his original complaint after obtaining counsel, and neither in his amended complaint nor at any subsequent juncture did Muhammad challenge his conviction for insolence, or the subsequent disciplinary action. See Brief for Petitioner 42. The amended complaint sought no expungement of the misconduct finding, and in fact Muhammad conceded that the insolence determination was justified. The only relief sought was $10,000 in compensatory and punitive damages "for the physical, mental and emotional injuries sustained" during the six days of prehearing detention mandated by the charge of threatening behavior attributable to Close's retaliatory motive. App. 72.

Following discovery, the Magistrate Judge recommended summary judgment for Close on the ground that Muhammad had failed to come forward with sufficient evidence of retaliation to raise a genuine issue of material fact as to that element. *Id.,* at 63. The District Court adopted the recommendation. *Id.,* at 70.

B

Muhammad then appealed to the United States Court of Appeals for the Sixth Circuit, which, by an opinion designated not for publication, affirmed the summary judgment for Close, though not on the basis recommended by the Magistrate Judge and adopted by the District Court. 47 Fed. Appx. 738 (2002). Instead of considering the conclusion that Muhammad had produced inadequate evidence of retaliation, a ground that would have been dispositive if sustained, the Court of Appeals held the action barred by *Heck* because Muhammad had sought, among other relief, the expunge-

ment of the misconduct charge from the prison record. Relying upon Circuit precedent, see *Huey* v. *Stine,* 230 F. 3d 226 (2000), the Court of Appeals held that an action under § 1983 to expunge his misconduct charge and for other relief occasioned by the misconduct proceedings could be brought only after satisfying *Heck*'s favorable termination requirement. The Circuit thus maintained a split on the applicability of *Heck* to prison disciplinary proceedings in the absence of any implication going to the fact or duration of underlying sentence, four Circuits having taken the contrary view. See *Leamer* v. *Fauver,* 288 F. 3d 532, 542–544 (CA3 2002); *DeWalt* v. *Carter,* 224 F. 3d 607, 613 (CA7 2000); *Jenkins* v. *Haubert,* 179 F. 3d 19, 27 (CA2 1999); *Brown* v. *Plaut,* 131 F. 3d 163, 167–169 (CADC 1997). We granted certiorari to resolve the conflict, 539 U. S. 925 (2003), and now reverse.

## III

The decision of the Court of Appeals was flawed as a matter of fact and as a matter of law. Its factual error was the assumption that Muhammad sought to expunge the misconduct charge from his prison record. The court simply overlooked the amended complaint that sought no such relief.

The factual error was compounded by following the mistaken view expressed in Circuit precedent that *Heck* applies categorically to all suits challenging prison disciplinary proceedings. But these administrative determinations do not as such raise any implication about the validity of the underlying conviction, and although they may affect the duration of time to be served (by bearing on the award or revocation of good-time credits) that is not necessarily so. The effect of disciplinary proceedings on good-time credits is a matter of state law or regulation, and in this case, the Magistrate Judge expressly found or assumed that no good-time credits were eliminated by the prehearing action Muhammad called in question. His § 1983 suit challenging this action could not therefore be construed as seeking a judgment at odds with

his conviction or with the State's calculation of time to be served in accordance with the underlying sentence. That is, he raised no claim on which habeas relief could have been granted on any recognized theory, with the consequence that *Heck*'s favorable termination requirement was inapplicable.

## IV

Close tries to salvage the appellate court's judgment by arguing for the first time here that *Heck* is squarely on point because, if the § 1983 suit succeeded, Muhammad would be entitled to restoration of some good-time credits with the result of less time to be spent in prison. Brief for Respondent 17–18. But this eleventh-hour contention was waived. The Magistrate Judge's report stated that good-time credits were not affected by the allegedly retaliatory overcharge of threatening behavior and the consequential prehearing detention Muhammad complained of, and Close had every opportunity to challenge the Magistrate Judge's position in the District Court and in the Court of Appeals. Having failed to raise the claim when its legal and factual premises could have been litigated, Close cannot raise it now. See *Auer* v. *Robbins*, 519 U. S. 452, 464 (1997).

The judgment of the Court of Appeals, accordingly, is reversed, and the case is remanded for consideration of summary judgment on the ground adopted by the District Court, and for any further proceedings consistent with this opinion.

*It is so ordered.*