[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 18, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-11178
Non-Argument Calendar

_____

D. C. Docket No. 08-14032-CV-KMM

GLENN SMITH,

Plaintiff-Appellant,

versus

CORRECTION OFFICER M. VILLAPANDO,
MAJOR T. SHEFFIELD,
JACKIE ADAMS,
all in their individual capacities,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 18, 2008)**

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Glenn Smith, a Florida prisoner, appeals the district court's <u>sua sponte</u>

dismissal of his 42 U.S.C. § 1983 civil rights complaint against officers M.

Villapando, T. Sheffield, and Jackie Adams for failure to state a claim, pursuant to

28 U.S.C. § 1915(e)(2)(B)(ii).  After review, we vacate the district court's order

dismissing Smith's complaint.

## I.  BACKGROUND

Smith's <u>pro se</u> verified complaint alleges that the defendants retaliated

against him for exercising his First Amendment rights and denied him due process

during his disciplinary hearing and administrative appeals.[1]

### A.    April 28, 2005 Incident

On April 28, 2005, Smith was in disciplinary confinement at Okeechobee

Correctional Institute.  Two corrections officers brought another inmate to Smith's

cell.  Smith told the officers he did not want a cellmate because he was nearly

beaten to death by a previous cellmate and was housed alone since then.  Officer

Harris told Smith that he needed to request protective custody if he feared for his

safety, and Smith verbally did so.  Nevertheless, Harris insisted that Smith was

getting a cellmate and told Smith to handcuff himself.  When Harris opened the

---

[1] In reviewing a dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), we take the allegations in the complaint as true.  <u>Hughes v. Lott</u>, 350 F.3d 1157, 1159-60 (11th Cir. 2003).

door to Smith's cell to place the other inmate inside, Smith stood in the doorway to the cell, refused to move when instructed to do so, and stood firmly when Harris tried to push him into the cell.

Defendant Villapando, another corrections officer, observed the incident and instructed Smith to go to the shower while the other inmate was placed in Smith's cell. Defendant Villapando told Smith that if he ever came at an officer again, Villapando would put him down.

Defendant Sheffield, another corrections officer, then arrived, and Smith renewed his verbal request for protective custody. Defendant Sheffield told Smith that he must make his request in writing and that he would have a cellmate while his request was processed. Smith told Sheffield that the prison knew about his past problems with cellmates and was now retaliating against him. Sheffield said that Smith would be receiving two disciplinary reports ("DR"), one for declining a cellmate and another for protesting Sheffield's handling of the matter.

Defendant Sheffield left, and defendant Villapando, along with two other corrections officers, moved Smith from the shower back to his cell. When Smith refused to enter the cell, the three officers pushed him inside. Later in the day, Smith completed the protective custody request form, and his cellmate was moved to another cell.

3

**B.    Two Disciplinary Reports**

On May 4, 2005, Smith was served with two separate DRs written by Villapando and approved by Sheffield.  One DR was for disorderly conduct and stated that when defendant Villapando escorted Smith to the shower, Smith kicked the shower door, yelled "I don't want a fucking roommate!" and refused Villapando's orders to stop his disruptive conduct.  Smith denied these facts in his complaint.

The other DR was for disobeying orders.  The disobeying orders DR stated that Smith refused orders to step out of the cell entrance to receive a cellmate, stated "No, I will not!  I decline having a cellmate!" and refused to comply with further orders to step out.

After a disciplinary hearing, Smith was found guilty on both DRs.  Smith received thirty days of disciplinary confinement for the disorderly conduct DR and thirty days of disciplinary confinement and loss of sixty days of gain time for the disobeying orders DR.  Smith's appeal to the warden was denied by the assistant warden.  Smith's appeal to the Secretary of the DOC was also denied.

**C.    Procedural History**

Smith's § 1983 complaint challenged only the disorderly conduct DR, not

the disobeying orders DR.[2]  Smith's complaint raised two claims.  First, Smith claimed that the disorderly conduct DR was issued in retaliation for him exercising his First Amendment rights (1) to protest having a cellmate when he previously was beaten by a cellmate, and (2) to complain about the corrections officers' actions during the incident.

Second, Smith's complaint alleged that his due process rights were violated in the adjudication and appeal of the disorderly conduct DR because: (1) his institutional appeal was not decided by the warden, as required by prison regulations; (2) Villapando's "false accusatory" statements were not entitled to the "some evidence" standard of review; and (3) the disciplinary hearing team (a) relied on evidence that had no indicia of reliability, (b) did not explain why Smith's own sworn evidence was unreliable and less credible than Villapando's unsworn statement, (c) did not allow Smith to present live witnesses, (d) did not explain its reasons for the punishment imposed, and (e) failed to follow prison regulations requiring it to impose a punishment proportional to the infraction.

Smith's complaint requested that the district court award him (1) a declaratory judgment that the defendants violated his First Amendment and due process rights, (2) nominal and punitive damages, and (3) an injunction ordering

---

[2]Smith's complaint says that he has filed a habeas corpus petition challenging the disobeying orders DR.

5

that defendant Adams overturn the disorderly conduct DR and undo its consequences.

The magistrate judge's report ("R&R") recommended that Smith's § 1983 complaint be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim. As to Smith's retaliation claim, the R&R recommended dismissal because Smith admitted that he refused to comply with verbal orders to allow an inmate to enter his cell and that he acted in a defiant, disorderly manner. Thus, the R&R concluded that Smith's retaliation claim had no merit and that Smith failed to raise facts to show that there was a causal link between his alleged First Amendment activity and the DR.

As to Smith's due process claims, the R&R recommended dismissal because his request for injunctive relief (overturning the DRs) would result in the restoration of gain time and thus should have been brought in a habeas corpus petition, not a § 1983 action. Further, to the extent Smith sought damages, the R&R concluded that his claims were barred because the relief sought would imply the invalidity of his conviction or sentence.

The district court overruled Smith's objections and adopted the R&R. This appeal followed.

## II. DISCUSSION

A district court is required to dismiss an <u>in forma pauperis</u> ("IFP") action when it fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). We review <u>de novo</u> a § 1915(e)(2)(B)(ii) <u>sua sponte</u> dismissal for failure to state a claim. <u>Hughes v. Lott</u>, 350 F.3d 1157, 1159-60 (11th Cir. 2003).

### A.   Retaliation Claim

Prison officials cannot retaliate against a prisoner for exercising his First Amendment right of free speech. <u>Farrow v. West</u>, 320 F.3d 1235, 1248 (11th Cir. 2003). To establish a retaliation claim under the First Amendment, a prisoner must show a causal connection between his protected speech and the harm of which he complains. <u>Id.</u> at 1248-49.

Smith's verified complaint denied the factual basis for the disorderly conduct in the DR. The disorderly conduct DR stated that Smith kicked the shower door, yelled "I don't want a fucking roommate!" and refused defendant Villapando's orders to stop his disruptive behavior. Smith's complaint averred that (1) Villapando's factual statement in the DR was "entirely fabricated," and (2) "Plaintiff never yelled, never used profane language, never kicked on any doors in refusing that an inmate unknown to plaintiff be placed in the cell with plaintiff."

7

Viewing the allegations in Smith's verified complaint as true, Smith (1) exercised his right to protest that he was being given a cellmate and to request protective custody, and (2) in response, defendant Villapando made the false allegations resulting in disciplinary confinement. In dismissing Smith's complaint, the district court relied on the fact that Smith admitted to blocking his cell door when the corrections officers tried to give him a cellmate. However, those actions formed the basis for the disobeying orders DR, not the disorderly conduct DR at issue here. Smith did not admit to the specific conduct detailed in the disorderly conduct DR. Thus, the district court erred in dismissing Smith's retaliation claim on that basis.

**B.    Due Process Claims**

Smith argues that the district court erred in dismissing his due process claims on the basis that they sought restoration of gain time and thus would imply that the duration of his sentence was invalid. Smith points out that his § 1983 complaint challenged only the disorderly conduct DR, which did not involve a loss of gain time.

In Preiser v. Rodriguez, a case involving prisoners who sought injunctive relief to compel restoration of good-time credits, the Supreme Court concluded that "when a state prisoner is challenging the very fact or duration of his physical

8

imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." 411 U.S. 475, 500, 93 S. Ct. 1827, 1841 (1973). In addition to equitable relief, a prisoner cannot obtain damages under § 1983 if doing so would imply that his outstanding conviction or sentence was invalid. Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S. Ct. 2364, 2372 (1994). This rule includes challenges to the loss of gain time. Edwards v. Balisok, 520 U.S. 641, 646-48, 117 S. Ct. 1584, 1588-89 (1997).

However, the Supreme Court has made clear that these rules do not apply categorically to all lawsuits challenging prison disciplinary actions. See Muhammad v. Close, 540 U.S. 749, 754, 124 S. Ct. 1303, 1306 (2004). In Muhammad, a prisoner filed a § 1983 action claiming that a prison official had charged and subjected him to pre-hearing lockup in retaliation for earlier lawsuits and grievance proceedings the prisoner had filed. Id. at 753, 124 S. Ct. at 1305. The Supreme Court concluded that the § 1983 suit did not necessarily affect the computation of good-time credits, so it "could not therefore be construed as seeking a judgment at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence." Id. at 754-55, 124 S. Ct. at 1306. Because the § 1983 suit did not implicate a claim that was

9

cognizable in a habeas proceeding, Heck was inapplicable. Id. at 755, 124 S. Ct. at 1306.

Here, the first page of both Smith's complaint and supporting memorandum stated that he was challenging only the disorderly conduct DR, for which he received thirty days in disciplinary confinement as punishment. Although he lost gain time based on the disobeying orders DR, Smith does not challenge this DR in his complaint or seek any relief pertaining to it. Thus, the district court erred in finding that Smith sought restoration of gain time and, under Muhammad, in dismissing Smith's due process claims on the ground that the relief Smith sought would necessarily imply the invalidity of the duration of his confinement.

### III. CONCLUSION

For the reasons discussed herein, we vacate the district court's order dismissing Smith's complaint and remand for further proceedings consistent with this opinion.[3]

**VACATED AND REMANDED.**

---

[3]The district court sua sponte dismissed Smith's retaliation and due process claims. At the § 1915(e)(2)(B)(ii) stage, the defendants have not been served and thus have not filed an answer in the district court or a brief on appeal. Therefore, we limit our opinion to solely the district court's sua sponte dismissal, and nothing herein shall prejudice the defendants, once served, from raising any and all deficiencies or defenses the defendants may wish to assert as to whether Smith's complaint states a claim for relief.