NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0213n.06

No. 08-1696

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RICKY A. TAYLOR, | ) | |
| | ) | |
| Plaintiff–Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| C. LANTAGNE, MDOC Correctional | ) | WESTERN DISTRICT OF MICHIGAN |
| Officer, sued in his official and individual | ) | |
| capacities, | ) | |
| | ) | |
| Defendant–Appellee. | ) | |

Before: MARTIN, GIBBONS, and KETHLEDGE, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff–appellant Ricky Allen Taylor appeals the district court's decision dismissing with prejudice his 42 U.S.C. § 1983 First Amendment retaliation claim for failure to state a claim upon which relief can be granted. On appeal, Taylor argues that the district court's determination that his § 1983 action is barred by the favorable termination rule of *Heck v. Humphrey* and *Wilkinson v. Dotson* was erroneous and that, regardless of the court's ruling on the first issue, he can still seek damages. For the reasons that follow, we reverse the district court and remand the case for service of process.

I.

Taylor is a prisoner in the Michigan prison system. He was sentenced on May 24, 1999, for unarmed robbery in violation of § 750.530 of the Michigan Penal Code. In August 2007, Taylor was being held at the Ionia Maximum Correctional Facility ("Ionia").

Taylor alleges that on August 15, 2007, he invoked his First Amendment rights by filing a grievance against Officer C. Lantagne, a corrections officer at Ionia. The grievance alleged that Officer Lantagne was smoking right next to the entrance to the prisoner housing unit, in front of an open window, allowing second hand smoke to blow directly into the housing unit. This behavior was contrary to Michigan law, which prohibits smoking within twenty feet of the entrance of any Department of Corrections building. Prison regulations provide a procedure for such grievances and stress that the right of the nonsmoker complainant to protect his or her health will prevail over an employee's or prisoner's desire to smoke. Lantagne was reviewed for the grievance on August 22, 2007.

Taylor alleges that on the following day, August 23, 2007, Lantagne came to Taylor's cell, even though Lantagne had no duties in Taylor's housing unit. Taylor was on Loss of Privilege ("LOP") status at the time. Prison policies require that a prisoner's appliances be confiscated if the prisoner is not allowed to use them, but if the appliance is not confiscated, the prisoner has the right to use it. Taylor was watching television, as he was permitted to do, when Lantagne arrived and gave him a direct order to turn off the TV on the grounds that his LOP status denied him the right to watch it. When Taylor did not immediately turn off the TV—instead he explained that he was allowed to watch it—Lantagne wrote a misconduct slip for failure to obey a direct order.

Taylor was charged with misconduct. At the hearing, the Hearing Officer admitted that Taylor had a right to watch TV, but because Taylor could have followed the order by Lantagne, he was found guilty of major misconduct. Because of the misconduct violation, Taylor was placed in Top Lock for twelve days, lost 8 days' wages from his institutional job, and had four points added to his institutional record. This reduced his ability to move to a better institutional job, to obtain placement in a lower security facility, and to be paroled.

Taylor's complaint alleges that Lantagne's actions were in retaliation for Taylor's filing of the grievance against Lantagne. To support this assertion, Taylor notes that because Lantagne worked in another part of the prison, and because Taylor's housing unit was staffed by two correctional officers who were aware of Taylor's LOP status, there was no reason for Lantagne to come to Taylor's cell. Moreover, Lantagne walked past seven other prisoners in LOP status and did not ask them to turn off their televisions. According to Taylor, these facts suggest that Lantagne's motive was retaliation.

Taylor brought his § 1983 action *pro se*. After reviewing the complaint, Magistrate Judge Ellen S. Carmody *sua sponte* issued a Report and Recommendation ("Report"), which suggested that Taylor's complaint should be dismissed for failure to state a claim. The Report focused on *Heck v. Humphrey*, 512 U.S. 477 (1994), *Wilkinson v. Dotson*, 544 U.S. 74 (2005), and *Muhammad v. Close*, 540 U.S. 749 (2004), for the proposition that "where a plaintiff has lost good-time credits as the result of [a] misconduct conviction," Supreme Court precedent requires "'the favorable termination of a disciplinary proceeding before a civil rights action may be filed.'" *Taylor v. Lantagne*, No. 1:07-cv-1233, 2008 WL 1780943 at *2 (W.D. Mich. Jan. 31, 2008) (quoting *Johnson v. Coolman*,

102 F. App'x 460, 461 (6th Cir. 2004) (citing *Muhammad*, 540 U.S. at 754–55 (2004))). Taylor's complaint had alleged "two years lost of earned and special good time an[d] disciplinary credits" and requested restoration of "all good time credits." Noting that under Michigan law "a prisoner loses good-time credits for the month of his major misconduct disciplinary conviction" and that Taylor "expressly requests the reinstatement of those credits," the Report found Taylor's claim noncognizable. *Taylor*, 2008 WL 1780943 at *2. The court stated, "[a] ruling on the claim would . . . necessarily imply the invalidity of his disciplinary conviction." *Id.* The district court denied Taylor's objections to the Report, adopted the Report, and dismissed Taylor's complaint with prejudice. Taylor now appeals that decision.

II.

We review *de novo* a district court's decision to dismiss under 28 U.S.C. §§ 1915(e), 1915A, and 42 U.S.C. § 1997e(c). *Grinter v. Knight*, 532 F.3d 567, 571–72 (6th Cir. 2008). In assessing a complaint for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accept his factual allegations as true, and determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation and citation omitted); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying the *Iqbal* standard to claims under 28 U.S.C. §§ 1915(e) and 1915A). The pleadings of *pro se* petitioners, such as Taylor, are liberally construed and held to a less stringent standard. *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)).

4

III.

Taylor first argues that the district court erred when it found that his § 1983 claim was barred by the favorable termination rule of *Heck v. Humphrey* and *Wilkinson v. Dotson.* Taylor argues that he was not eligible for good-time credits and merely sought expungement of disciplinary time, which would not affect the fact or duration of his confinement. We agree. Although the district court correctly explained the law of *Heck* and its progeny, it made a mistake in its interpretation of Michigan law. Because Taylor was not eligible for good-time credits, his major misconduct violation did not affect the duration of his confinement and should not bar his § 1983 claim. Accordingly, we find his claim may proceed and remand the case for further proceedings.

The district court dismissed Taylor's § 1983 claim because "a ruling on this claim would, if established, necessarily imply the invalidity of the disciplinary conviction." This holding by the district court stems from the *Heck/Wilkinson* favorable termination rule. In *Heck*, the Supreme Court held:

> [T]he hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement . . . . [I]n order to recover damages . . . for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486–87 (citation omitted). The *Heck* rule was extended to include good-time credits three years later. *Edwards v. Balisok*, 520 U.S. 641, 646, 648 (1997). Then *Wilkinson v. Dotson*

clarified that § 1983 actions are barred, no matter the relief sought, "*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." 544 U.S. at 82 (2005).

The Magistrate Judge's Report and Recommendation noted that after *Muhammad*, the *Heck/Wilkinson* bar still applies "where a plaintiff has lost good-time credits as the result of the misconduct violation." *Taylor*, 2008 WL 1780943 at *2. The Report went on to explain that under Michigan law a prisoner loses good-time credits for the month of his major misconduct disciplinary conviction. *Id.* at *3 (citing Mich. Comp. Laws § 800.33). Noting that Taylor expressly sought reinstatement of good-time credits, the Report found that the *Heck/Wilkinson* bar applied and recommended that Taylor's § 1983 claim be deemed noncognizable until he secured a favorable ruling on his misconduct violation. Id. at *3. The district court accepted the Report and dismissed Taylor's claim, with prejudice.

If Taylor had been eligible for good-time credits, the Report and subsequent judgment would have been correct, but Michigan law changed in 1998 so that § 800.33 did not apply. Section 800.34 governs Michigan's current good behavior rules. For all crimes committed after December 15, 2008, prisoners accrue "disciplinary time" which is submitted to the parole board to aid its determination. Mich. Comp. Laws § 800.34(2). Disciplinary time is not a "good time allowance," nor does it include "disciplinary credits." *See People v. Tyrpin*, 710 N.W. 2d 260, 262 (Mich. Ct. App. 2005). Moreover, prisoners subject to disciplinary time are "not eligible for good time, special good time, disciplinary credits, or special disciplinary credits." Mich. Comp. Laws § 800.33(14). Because Taylor committed his crime January 12, 1999, and was sentenced May 24, 1999, he falls under § 800.34 and is ineligible for any "good-time credits." The "disciplinary time" that Taylor accrued for

his major misconduct is simply a record that will be presented to the parole board to aid in its determination. We therefore find that it is not something that affects the length of Taylor's sentence or his eligibility for parole.

The Supreme Court explained in *Muhammad* that *Heck* does not categorically bar "all suits challenging prison disciplinary proceedings." *Muhammad*, 540 U.S. at 754. In *Muhammad*, where "no good-time credits were . . . called into question," a prisoner's § 1983 action was allowed to proceed because the suit was not "seeking a judgment at odds with [the] conviction or with the State's calculation of time to be served in accordance with the underlying sentence." *Id.* at 754–55. The Court found that because the § 1983 claim at issue was not something on which *habeas* relief could be granted, it was proper.

Taylor's § 1983 claim is similar. If the district court ultimately both determines that Lantagne's major misconduct proceeding against Taylor was in retaliation and voids the prison disciplinary proceeding, the decision will simply remove the disciplinary time Taylor has accrued, giving him a cleaner record before the parole board. Because the parole board still has complete discretion on whether or not to parole Taylor, his lack of the disciplinary time from this misconduct will not necessarily affect the duration of his confinement. *See Wilkinson*, 544 U.S. at 82 (holding that § 1983 actions are barred "*if* success in that action would *necessarily* demonstrate the invalidity of confinement or its duration") (second emphasis added). Because Taylor's challenge, like Muhammed's, does not call good-time credits into question or seek a judgment at odds with the length of his underlying sentence, we allow it to proceed.

7

Taylor also cites a recent decision of this court to support his conclusion. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), we permitted a very similar § 1983 First Amendment retaliation claim in Michigan to proceed. Thomas's sentence was governed by an earlier Michigan statute, under which a prisoner could be eligible for earlier parole after accruing sufficient "disciplinary credits." *Id.* at 439. We held that because eligibility for parole does not necessarily determine when a sentence expires, disciplinary credits do not necessarily affect the length of a sentence and therefore were not a bar to Thomas's § 1983 claim. *Id.* at 440. Taylor argues that if we have held that a Michigan system that permits earlier consideration for parole does not bar a § 1983 First Amendment retaliation claim, then an even less-permissive statute that simply counts violations for the parole board's consideration should not block his § 1983 claim. We agree.

A retaliation claim entails three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) . . . the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Taylor has adequately pled a retaliation claim. Taylor initiated a legitimate grievance against Lantagne. A major misconduct violation substantially limits prisoners' rights, so a prisoner of ordinary firmness would be dissuaded by Lantagne's retaliatory actions. And Taylor has alleged that Lantagne both had no business being in Taylor's housing unit and did not discipline other prisoners who were doing the same thing as Taylor, which suggests that Lantagne acted for retaliatory reasons.

Taylor's pleading undoubtedly confused the district court. Because Taylor asked for "good time credit," the district court reasonably applied Michigan Compiled Laws § 800.33 and correctly

8

barred Taylor's § 1983 claim under that statute. But had the district court applied the correct statute, § 800.34, it would have permitted Taylor's case to proceed. The error was elicited, in part, by Taylor, but it was not intentional. Because we construe a *pro se* plaintiff's pleadings liberally and hold them to a less stringent standard, *Martin*, 391 F.3d at 712, the fact that Taylor used the wrong terms in his pleading does not defeat his case. Moreover, as explained below, the law permits and justice requires that Taylor be allowed to replead to fix the error. Accordingly, we find that it was error to bar Taylor's § 1983 claim under the *Heck* rule and remand the case for further proceedings.

## IV.

Taylor argues, in the alternative, that if we were to deny his first claim by holding that it would affect the duration of his sentence, he should still be allowed to proceed on a § 1983 claim for damages stemming from the retaliatory order. Because we agree with Taylor's first argument, we do not need to reach this point.

However, we note that the *Heck/Wilkinson* favorable termination rule only bars a § 1983 action when the civil rights action would necessarily challenge the validity of a prisoner's confinement or its duration. *See Wilkinson*, 544 U.S. at 81–82. If, as here, a prisoner's loss of "good time" or "disciplinary time" stems from his refusal to obey an order, not the legality of the order itself, then the prisoner could be found guilty of major misconduct and lose his good time credits while still having a § 1983 claim that would in no way challenge that guilty finding. A court could properly find that the order was unconstitutional retaliation against the prisoner, while still finding that the prisoner was rightfully convicted of a disciplinary infraction and properly denied good time

credits, for failing to follow an order where it was possible to do so. The prisoner would not be able to have his disciplinary conviction expunged, but he would be eligible for monetary damages.

V.

For the foregoing reasons, we reverse the district court's dismissal of Taylor's complaint and remand the case for service of process.