# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 21, 2024

Lyle W. Cayce
Clerk

No. 22-30180

BRIAN MCNEAL,

*Plaintiff—Appellee*,

*versus*

JAMES LEBLANC,

*Defendant—Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:18-CV-736

_____

ON PETITION FOR REHEARING EN BANC

Before JONES, STEWART, and DUNCAN, *Circuit Judges*.

PER CURIAM:

Treating the petition for rehearing en banc as a petition for panel rehearing (5TH CIR. R. 35 I.O.P.), the petition for panel rehearing is DENIED. The petition for rehearing en banc is DENIED because, at the request of one of its members, the court was polled, and a majority did not vote in favor of rehearing (FED. R. APP. P. 35 and 5TH CIR. R. 35).

In the en banc poll, eight judges voted in favor of rehearing, Chief Judge Richman and Judges Jones, Smith, Ho, Duncan, Engelhardt, Oldham,

and Wilson, and nine voted against rehearing, Judges Stewart, Elrod, Southwick, Haynes, Graves, Higginson, Willett, Douglas, and Ramirez.

STUART KYLE DUNCAN, *Circuit Judge*, joined by RICHMAN, *Chief Judge*, and JONES, SMITH, ENGELHARDT, OLDHAM, and WILSON, *Circuit Judges*, dissenting from denial of en banc rehearing:

As I've explained before, in the rising tide of suits by overdetained prisoners against Louisiana officials, our court routinely misapplies *Connick v. Thompson*, 563 U.S. 51 (2011). *See McNeal v. LeBlanc*, 90 F.4th 425, 435–39 (5th Cir. 2024) (Duncan, J., concurring). Yes, we pay lip service to *Connick*'s requirement of a "pattern" of similar violations, *see Parker v. LeBlanc*, 73 F.4th 400, 405 (5th Cir. 2023), but in the same breath we read that requirement out of existence. *See id.* at 406 (rejecting any "distinction" between overdetention due to "misclassification" and overdetention due to other causes). *But see McNeal*, 90 F.4th at 437 (Duncan, J., concurring) (explaining that "[o]verdetentions occur for many reasons," and collecting decisions). The result is that our court has now "turn[ed] § 1983 into a source of vicarious liability for the heads of State agencies." *McNeal*, 90 F.4th at 439 (Duncan, J., concurring). That mocks *Connick* and decades of prior precedent. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Ironically, *Connick* overruled our en banc court. *See Thompson v. Connick*, 578 F.3d 293 (5th Cir. 2009) (mem.) (affirming district court by 8-8 vote). Now that a 9-8 majority has refused to rehear this case and correct our pattern of underruling *Connick*, our court may have the last word. If this were a movie, it would be called *The Fifth Circuit Strikes Back*.

I dissent.

Andrew S. Oldham, *Circuit Judge*, joined by Jones, Smith, Ho, Duncan, Engelhardt, and Wilson, *Circuit Judges*, dissenting from the denial of rehearing en banc.

Brian McNeal sued the Secretary of the Louisiana Department of Public Safety and Corrections ("DPSC"). McNeal alleged the Secretary wrongfully detained him for 41 days. All agree McNeal *could* have sought habeas relief during those 41 days. But he chose not to do that. He instead slept on his habeas rights, got out of jail, and then sought declaratory relief, compensatory and punitive damages, and attorneys' fees under 42 U.S.C. § 1983. A panel of our court blessed that approach, effectively holding that the federal habeas statute and § 1983 offer prisoners like McNeal an election of remedies: The former allows prisoners to get out of jail, while the latter allows prisoners to stay in jail and then sue for compensation later. That conflicts with multiple Supreme Court cases, so we should have reheard this case en banc.

I.

This case lies at the intersection of the federal habeas statute, 28 U.S.C. § 2241, and the principal federal civil rights statute, 42 U.S.C. § 1983. "At the time of § 1983's adoption, the federal habeas statute mirrored the common-law writ of habeas corpus, in that it authorized a single form of relief: the prisoner's immediate release from custody." *Wilkinson v. Dotson*, 544 U.S. 74, 85 (2005) (Scalia, J., concurring). The singular habeas remedy of release is a powerful one—so powerful that it transformed the common-law courts from agents of the Crown to independent guardians of liberty. *See, e.g.*, *Darnel's Case*, 3 How. St. Tr. 1 (K.B. 1627). Habeas is so powerful that its 1679 codification in England was the "second magna carta." 1 W. Blackstone, Commentaries *133. And today, the habeas remedy is so powerful that it allows federal courts to vitiate long-final judgments from co-sovereign state courts notwithstanding *res judicata* principles that would

otherwise apply. *See, e.g.*, 28 U.S.C. § 2254. Perhaps owing to its extraordinary power, the habeas remedy of release carries with it a host of limitations from both common law and statutory law that can make it difficult to win. *See, e.g.*, Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1217; *Beras v. Johnson*, 978 F.3d 246, 251–52 (5th Cir. 2020) (per curiam) (holding common-law limitations on habeas survive AEDPA's enactment).

Section 1983, by contrast, has none of this history. Congress enacted it 1871 as part of its wide-ranging efforts to fight the Ku Klux Klan. And perhaps owing to those wide-ranging efforts, § 1983 does not embrace one remedy—it embraces many, including money damages and equitable relief. And it carries with it the promise of attorney's fees under 42 U.S.C. § 1988.

Despite their radically different histories and scopes, § 2241 and § 1983 have one very important commonality: On their faces, they both apply to a prisoner who says he's in state custody in violation of the federal Constitution. *Compare* 28 U.S.C. § 2241(c)(3) (authorizing federal judges to grant habeas remedies to a state prisoner who "is in custody in violation of the Constitution"), *with* 42 U.S.C. § 1983 (authorizing federal judges to grant money damages and equitable relief against any state actor who deprives any person of "any rights, privileges, or immunities secured by the Constitution"). The Supreme Court has recognized this overlap and held that here, as in so many other areas, the specific controls the general. *See Preiser v. Rodriguez*, 411 U.S. 475, 489(1973). That is, where a prisoner seeks or could seek the specific, singular remedy of habeas (release), he cannot fall back on the general, broader remedies offered by § 1983 (damages, injunctions, declarations, &c.).

Consider for example *Preiser*. There the state prisoners filed suit under § 1983 and sought an injunction restoring good-time credits. The

Court rejected that effort and held that what the prisoners really wanted was to get out of jail earlier—and that is a habeas remedy. *Id.* at 488–90. Instead, the Court held the federal habeas corpus statute supplies the "exclusive [federal] remedy" for such claims. *Id.* at 489; *see Wilkinson*, 544 U.S. at 78 ("[A] prisoner in state custody cannot use a § 1983 action to challenge the fact or duration of his confinement . . . He must seek federal habeas corpus relief (or appropriate state relief) instead." (quotation omitted)). *Preiser* limited its holding to claims seeking equitable relief. *See* 411 U.S. at 494 ("[R]espondents here sought no damages, but only equitable relief—restoration of their good-time credits—and our holding today is limited to that situation."). In other words, *Preiser* held only that a prisoner cannot bring a claim under § 1983 if judgment for the prisoner would entitle him to "immediate release or a speedier release from that imprisonment." *Id.* at 500.

The Court later extended that to hold a claim is not cognizable under § 1983 if judgment for the plaintiff would "necessarily imply" that the prisoner is entitled to immediate or speedier release. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). For example, in *Edwards* a state prisoner sued prison officials under § 1983, alleging they revoked his good-time credits without affording him constitutionally adequate process. The prisoner requested only damages and so contended his § 1983 claim was not barred under *Preiser*. *Id.* at 643–44. But the Court rejected the claim anyway because "a win for the prisoner would 'necessarily imply the invalidity of the deprivation of his good-time credits' and get him out of prison 30 days sooner." *Crittindon v. Leblanc*, 37 F.4th 177, 194 (2022) (Oldham, J., dissenting) (quoting *Edwards*, 520 U.S. at 646). Thus, under *Preiser* and *Edwards*, a prisoner who sues to get out of jail (or to get out of jail sooner) must use the specific remedy Congress enacted for that purpose: Habeas.

All agree that McNeal had a habeas remedy on the first day of his overdetention, call it Day 1. On Day 1, McNeal could have sued in state habeas court to get a specific remedy—release. McNeal concedes the fact. *See* ROA.244 (Brief in Opposition to Defendants' Motion for Summary Judgment) (citing an example in which the DOC "release[ed an] overdetained person within hours of the filing of a habeas petition"). And if for whatever reason prison officials denied him release, and the state courts were either unwilling or unable to give him that remedy,[1] McNeal could have sued in federal court under § 2241 on Day 2 or 3 or 10 or 41. All also agree, of course, that McNeal had *zero* remedy under § 1983 on Day 1, 2, 3, 10, or 41. It turns *Preiser* and *Edwards* upside down to say that McNeal's world flips on Day 42 (the day of his release)—such that he then had zero habeas remedy but limitless § 1983 remedies. The panel's holding allows a prisoner to forgo the specific remedy afforded by § 2241, wait six weeks, and then choose the

---

[1] It is baseless to suggest, as a panel of our court did, that overdetained prisoners cannot get habeas relief. *See Hicks v. LeBlanc*, 81 F.4th 497, 509 & n.76 (5th Cir. 2023). It is of course true that a would-be § 2241 petitioner like McNeal would have to exhaust his remedies in state court first. *See Thomas v. Crosby*, 371 F.3d 782, 812 (11th Cir. 2004) (Tjoflat, J., specially concurring) ("Although there is a distinction in the statutory language of §§ 2254 and 2241, there is no distinction insofar as the exhaustion requirement is concerned."). But we have no basis to think the state courts would have turned a blind eye to a properly filed habeas petition. And even if they did, the federal courts certainly would not have. *Cf.* 28 U.S.C. § 2254(b)(1)(B)(i)–(ii) (excusing federal habeas applicant from exhausting state remedies where "there is an absence of available State corrective process" and where "circumstances exist that render such process ineffective to protect the rights of the applicant"). McNeal's Day 1 habeas claim differs from claims arising in the mine-run state prisoner's case. In the latter kind of case, the prisoner is being held "pursuant to the judgment of a State court," *id.* § 2254(a), and the prisoner can be held until that judgment is set aside or otherwise held infirm. By contrast, once McNeal's sentence expired, he was being held without any authorization whatsoever—which has been a cognizable habeas claim since at least *Darnel's Case*, and which forms the heartland of § 2241.

general remedy afforded by § 1983. We have no basis for that general-controls-the-specific rule.

## II.

You might reasonably wonder how we got so far afield. The answer is a warning about our court's understanding of the party-presentation principle and the rule of orderliness.

We started this mistake in *Crittindon*. In that case, the panel majority held itself powerless to consider whether overdetention claims are non-cognizable under § 1983 because no party presented the question. *See id.* at 190. Still, the *Crittindon* panel majority discussed the purportedly non-presented problem. *See id.* at 190–92. And then *Hicks* returned to the *Crittindon*'s discussion of the purportedly non-presented problem and held it binding on all future panels of our court. *See Hicks v. LeBlanc*, 81 F.4th 497, 507 (5th Cir. 2023) ("*Crittindon* controls this case.").

This is a surreal double-whammy. Our court underruled *Preiser* and *Edwards* in *Crittindon* but shushed the dissent by insisting the question wasn't properly presented. Then *Hicks* blew past the party-presentation problem and held *Crittindon* binding on all the world. So one party's failure to brief a question to the panel's satisfaction in the first case somehow means all parties in all future cases must live with the doctrinal dictates of the very *Crittindon* panel that insisted it didn't have proper briefing to decide the relevant question in the first place. It raises serious questions about the interaction between our misunderstanding of the party-presentation principle and the rule of orderliness when a panel can pronounce a binding answer to a question it disclaimed authority to consider in the first place. *See also Solis v. Curtis*, --- F.4th ---, --- (5th Cir. Feb. 14, 2024) (Oldham, J., dissenting) (criticizing our court's misunderstanding of party presentation).

And even aside from these procedural shenanigans, the *Crittindon-Hicks* rule is indefensible on the merits. In those cases, our court held that prisoners can turn their habeas claims into § 1983 claims by (1) waiting until they get out jail and then (2) asking for money damages (a non-habeas remedy) to compensate for illegal confinement. *See Hicks*, 81 F.4th at 507–09. The *Crittindon-Hicks* theory appears to be that the prisoner did not request a habeas remedy; the prisoner did not allege a problem in his conviction or sentence; the prisoner only claimed he was held in jail too long and in excess of his sentence; and therefore, § 1983's gates are wide open to him. The problem, of course, is that the § 1983 plaintiffs in *Preiser* and *Edwards* tried the same move and lost. In *Preiser*, the prisoner alleged only "that the deprivation of [his] good-conduct-time credits was causing or would cause [him] to be in illegal physical confinement." 411 U.S. at 487. And in *Edwards* the prisoner alleged only a defect in the revocation of his good-time credits. Neither prisoner challenged his underlying conviction or sentence—just that he wanted to get out of jail sooner than his custodian planned. Nevertheless, the Court held that neither claim could proceed under § 1983. So it is no answer for the *Hicks* panel to say the § 1983 claim can forward because it does not challenge the validity of Hicks' sentence.[2]

It is true that neither *Preiser* nor *Edwards* considered overdetention claims. But it's also irrelevant because any prisoner could easily reframe any sentence-execution challenge into an overdetention claim. Consider the following hypothetical: Prison officials revoke a year's worth of good-time credits from a prisoner (call her Patricia) following administrative

---

[2] *Hicks* tried to ground the distinction in *Muhammad v. Close*, 540 U.S. 749 (2004) (per curiam), but *Muhammad* is plainly irrelevant. The Court in that case held *Edwards* did not apply only because the prisoner's claim had no necessary implication for the duration of his confinement. *Id.* at 754.

proceedings Patricia thinks were constitutionally defective. So Patricia's release date changes from September 1, 2024, to September 1, 2025. Patricia never files a habeas petition; she simply sleeps on her rights until September 2, 2024. On that date, she brings an overdetention claim seeking damages under § 1983 alleging: (1) that she was entitled to release on September 1, 2024, because the prison officials' revocation of her good-time credits was *ultra vires*, and (2) by holding her beyond September 1, 2024, prison officials detained her in excess of her sentence, in violation of her constitutional rights.

If McNeal's claim is cognizable under § 1983, it is hard to see why Patricia's claim is not.[3] Like McNeal, Patricia does not challenge her conviction or its attendant sentence. She alleges only that she should have been released on September 1, 2024, and that she is accordingly entitled to damages. Put differently, Patricia challenges only "the execution of h[er] release." *Hicks*, 81 F.4th at 506. But that is obviously a problem because judgment for Patricia would "necessarily imply" the unlawfulness of his confinement, and of the deprivation of his good-time credits. *Edwards*, 520 U.S. at 648. So allowing Patricia's claim to proceed would be flatly inconsistent with *Edwards*. And that is true even though Patricia (like McNeal) seeks only damages to compensate for her alleged overdetention.

The upshot is that if our precedents are right, a clever prisoner can challenge all manner of things related to his conviction and sentence through § 1983 instead of habeas. All he must do is sleep on his rights until his

---

[3] The only material difference between Patricia and McNeal is that McNeal is no longer in custody. But that distinction is legally irrelevant because our precedents currently dictate that the limits on § 1983 cognizability apply irrespective of custodial status. *See Wilson v. Midland Cnty., Texas*, 89 F.4th 446, 454 (5th Cir. 2023).

(ostensible) release date passes. And voila—the prisoner is no longer forced to choose the specific habeas remedy over the general § 1983 remedy.

\*       \*       \*

This court has twisted itself into knots to avoid a conclusion that should be obvious: A prisoner who has a habeas remedy cannot sue under § 1983. *See Crittindon*, 37 F.4th at 193 n.1 (Oldham, J., dissenting). Our precedents embrace a contrary rule and should be overruled. It is a shame that we failed to do that here. And we will not be able to avoid reconfronting these issues when we rehear *Wilson v. Midland Cnty., Texas*, 89 F.4th 446 (5th Cir. 2024) (en banc rehearing granted Feb. 14, 2024).

For now, I respectfully dissent.